# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### at Charleston

THE WEST VIRGINIA COALITION                    :
AGAINST DOMESTIC VIOLENCE, INC.,               :
                                               :
     *Plaintiff,*                              :
                                               :
v.                                             :    Case No. 2:19-cv-00434
                                               :    (Judge John T. Copenhaver, Jr.)
                                               :
                                               :
PATRICK J. MORRISEY, in his official           :
capacity as Attorney General for the           :
State of West Virginia                         :
                                               :
     *Defendant.*                             :

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATEMENT ......................................................................................................... 2

SUMMARY OF ARGUMENT ............................................................................... 4

ARGUMENT .......................................................................................................... 5

   I.    The Coalition Lacks Standing To Bring This Lawsuit. ............................ 5

   II.   The Coalition's Claims Are Not Ripe For Adjudication. .................... 17

   III.  Alternatively, This Court Should Order A More Definite Statement ........... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*281 Care Comm. v. Arneson,*
  638 F.3d 621 (8th Cir. 2011) ..................................................................... 11

*Abbott v. Pastides,*
  900 F.3d 160 (4th Cir. 2018) ............................................................... 11, 12

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ................................................................................. 18

*Ala. Legislative Black Caucus v. Alabama,*
  135 S. Ct. 1257 (2015) ......................................................................... 6, 17

*Am. Civil Liberties Union v. The Fla. Bar,*
  999 F.2d 1486 (11th Cir. 1993) ................................................................ 11

*Ariz. Christian Sch. Tuition Org. v. Winn,*
  563 U.S. 125 (2011) ................................................................................... 5

*Babbitt v. Farm Workers,*
  442 U.S. 289 (1979) ................................................................................... 8

*Bautista v. L.A. Cty.,*
  216 F.3d 837 (9th Cir. 2000) .................................................................... 20

*Bryant v. Woodall,*
  363 F. Supp. 3d 611 (M.D.N.C. 2019) ...................................................... 14

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................................... 7

*Cooksey v. Futrell,*
  721 F.3d 226 (4th Cir. 2013) .................................... 7, 9, 11, 12, 18, 19

*Cunningham v. LeGrand,*
  2011 WL 1807360 (S.D. W. Va. May 10, 2011) ........................................ 20

*Davison v. Randall,*
  912 F.3d 666 (4th Cir. 2019) ...................................................................... 9

*Ellis v. Dyson,*
  421 U.S. 426 (1975) ................................................................................. 8, 9

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*,
   576 F. Supp. 2d 1281 (N.D. Fla. 2008) ....................................................... 3

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) (*per curiam*) ........................................................... 5

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ....................................................................................... 5

*Hodgson v. Va. Baptist Hosp., Inc.*,
   482 F.2d 821 (4th Cir. 1973) ...................................................................... 20

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ........................................................................................... 8

*Home Depot U.S.A., Inc. v. Jackson*,
   139 S. Ct. 1743 (2019) .................................................................................. 5

*In re Kachkar*,
   769 F. App'x 673 (11th Cir. 2019) .............................................................. 14

*Laird v. Tatum*,
   408 U.S. 1 (1972) ................................................................................... 10, 11

*Magee v. United States*,
   93 F. Supp. 2d 161 (D.R.I. 2000) ............................................................... 13

*Mink v. Suthers*,
   482 F.3d 1244 (10th Cir. 2007) .................................................................. 14

*Minnesota Federation of Teachers v. Randall*,
   891 F.2d 1354 (8th Cir. 1989) .................................................................... 17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ..................................................................................... 17

*Nat'l Union Fire Ins. Co. of Pittsburg v. Ferguson Enters., Inc.*,
   2014 WL 12588684 (E.D. Va. July 8, 2014) .............................................. 20

*New Hampshire Hemp Council, Inc. v. Marshall*,
   203 F.3d 1 (1st Cir. 2000) ...................................................................... 9, 10

iv

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*People for the Ethical Treatment of Animals, Inc. v. Stein,*
  737 F. App'x 122 (4th Cir. 2018) ............................................................. 11

*Ramirez v. Sanchez Ramos,*
  438 F.3d 92 (1st Cir. 2006) ...................................................................... 11

*Ranchers Cattlemen Action Legal Fund United Stockgrowers
  of America v. United States Department of Agriculture,*
  415 F.3d 1078 (9th Cir. 2005) .................................................................. 16

*Reddy v. Foster,*
  845 F.3d 493 (1st Cir. 2017) ..................................................................... 19

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*
  713 F.3d 175 (4th Cir. 2013) ...................................................................... 5

*South Carolina v. United States,*
  912 F.3d 720 (4th Cir. 2019) .................................................................... 17

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................................... 6, 7

*Steffel v. Thompson,*
  415 U.S. 452 (1974) .................................................................................. 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662 (2010) ................................................................................ 18

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................................... 7, 8

*Taubman Realty Group Limited Partnership v. Mineta,*
  320 F.3d 475 (4th Cir. 2003) .................................................................... 15

*Taubman v. Mineta,*
  198 F. Supp. 2d 744 (E.D. Va. 2002) .................................................. 15, 16

*United States v. Oakland Cannabis Buyers' Cooperative,*
  190 F.3d 1109 (9th Cir. 1999) .................................................................. 10

*United States v. Storer Broad. Co.,*
  351 U.S. 192 (1956) ................................................................................ 18

v

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Va. House of Delegates v. Bethune-Hill,*
    139 S. Ct. 1945 (2019) ................................................................... 5

*Virginia v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1988) .................................................................... 10

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ...................................................................... 7

*Wikimedia Found. v. Nat'l Sec. Agency,*
    857 F.3d 193 (4th Cir. 2017) .......................................................... 5

*Wilson v. State Bar of Georgia,*
    132 F.3d 1422 (11th Cir. 1998) ................................................ 12, 13

## Constituitonal Provisions

U.S. Const. art. III, § 2 .................................................................... 5

## Statutes

2018 W. Va. Acts 19 ........................................................................ 2

Florida Statute § 790.251 ................................................................ 3

West Virginia Code § 61-7-14 .......................... 1, 2, 3, 4, 6, 7, 8, 10, 11, 15, 18, 19, 20

## Rules

Federal Rule of Civil Procedure 10(b) ......................................... 4, 19, 20

Federal Rule of Civil Procedure 12(e) ............................................... 20

## Other Authorities

Malerie Leigh Bulot *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws,*
    78 La. L. Rev. 989 (2018) .............................................................. 1

*Our Team,* Everytown For Gun Safety Support Fund ............................... 1

## INTRODUCTION

Last year, joining over 20 other States with materially similar laws, the West Virginia Legislature enacted West Virginia Code § 61-7-14(d).  This new provision of the West Virginia Code safeguards privacy rights and protects the constitutional right to keep and bear arms by generally allowing employees, invitees, and customers to keep a firearm in their locked vehicle in a business's parking lot.  To date no court in the country has struck down a "parking lot law" under any of the theories The West Virginia Coalition Against Domestic Violence, Inc. ("the Coalition") espouses.  And not for lack of trying:  "Employers [have] challenged [parking lot] statutes in courts across the nation on constitutional grounds," yet courts have routinely upheld them "[d]espite the employers' best arguments"  Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws*, 78 La. L. Rev. 989, 999 (2018).

But this Court need not reach these issues for a more fundamental reason: This Court lacks subject-matter jurisdiction.  The Coalition cannot show that any of its members would have standing to sue on their own behalf because there is no credible threat of enforcement.  At minimum, challenging the provision that governs questions about individuals' exercise of the rights the Act protects is not germane to the Coalition's purpose.[1]  Furthermore, the Coalition's claims are not ripe for disposition.

---

[1] It does, however, advance counsel's purpose; they specialize in "affirmative litigation" against "the gun industry."  *See Our Team*, Everytown For Gun Safety Support Fund, https://everytownresearch.org/law/our-team (last visited Aug. 5, 2019).

## STATEMENT

On March 10, 2018, the West Virginia Legislature passed House Bill 4187—The Business Liability Protection Act. *See* 2018 W. Va. Acts 19. On March 21, 2018, the Governor signed the legislation, and when it went into effect on June 8, 2018, *see id.*, it added Section 61-7-14(d) to the West Virginia Code. It bars any employer or business from "prohibit[ing] any customer, employee, or invitee from possessing any legally owned firearm" so long as the firearm is "[l]awfully possessed," is "[o]ut of view," is "[l]ocked inside or locked to a motor vehicle in a parking lot," and "the customer, employee, or invitee" is not trespassing. W. Va. Code § 61-7-14(d)(1).

The statute also prohibits conditioning entry into a parking lot on an agreement not to have a firearm in the vehicle. W. Va. Code § 61-7-14(d)(4). Similarly, an employer may not "condition employment" on an employee holding (or not holding) a concealed handgun license, *id.* § 61-7-14(d)(3)(A), or an employee agreeing not to bring a firearm into a parking lot, *id.* § 61-7-14(d)(3)(B).

Section 61-7-14(d) also prohibits any employer or business from inquiring—either orally or in writing—"regarding the presence or absence of a firearm locked inside or locked to a motor vehicle in a parking lot." W. Va. Code § 61-7-14(d)(2)(A) ("the Inquiry Provision"). If an individual does reveal that he or she has a lawfully possessed firearm in his or her vehicle, an employer or business may not "[t]ake any action" based on that information. *Id.* § 61-7-14(d)(2)(C). The Act similarly prohibits any employer or business from "conducting an actual search of a motor vehicle in a parking lot to ascertain the presence of a firearm within the vehicle." *Id.* § 61-7-14(d)(2)(B).

2

These prohibitions, however, do not apply to businesses "located at the primary residence of the property owner." W. Va. Code. § 61-7-14(a)(1). All of these provisions also closely mirror Florida Statute § 790.251—passed about 11 years ago—which withstood a similar constitutional challenge to this case. *See Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1281, 1293 (N.D. Fla. 2008).

West Virginia Attorney General Patrick J. Morrisey ("Defendant") is responsible for enforcing West Virginia Code § 61-7-14(d)—the statutory provision the Coalition challenges. *See* W. Va. Code § 61-7-14(f). Yet even though almost 14 months have passed since House Bill 4187's effective date, there have been no enforcement actions under Section 61-7-14(f). Indeed, the Office of the Attorney General has not received a single complaint of a Section 61-7-14(d) violation in this time. Only two individuals have called the Office about Section 61-7-14(d), and both simply requested clarification about the statute's scope. Neither caller filed a complaint, requested that Defendant exercise his Section 61-7-14(f) enforcement authority, or even provided details about alleged violations that could have warranted further investigation or action. Defendant also does not intend to enforce Section 61-7-14(d) without a complaint.

On June 6, 2019, the Coalition—whose mission is "to end personal and institutional violence in the lives of women, children and men," Compl. ¶ 21—filed this action. The Coalition seeks a declaration that Section 61-7-14(d) is unconstitutional and an injunction barring Defendant from enforcing it, even though

the law is much like those in about 20 other jurisdictions—none of which have been struck down under the theories the Coalition raises here.

## SUMMARY OF ARGUMENT

The Coalition lacks standing to maintain this action. As the Coalition asserts associational standing, it must show that its members could sue on their own behalf. But there is no credible threat of Defendant enforcing West Virginia Code § 61-7-14(d) against the Coalition's members. Defendant has received no complaints about the Coalition's members, nor does he plan to bring enforcement action without citizen complaints. This Court therefore should dismiss the Complaint with prejudice for want of jurisdiction. At a minimum, the Coalition's free speech claim is not germane to the Coalition's purpose. The Coalition therefore lacks standing to assert that claim and it must be dismissed with prejudice.

This Court also lacks subject-matter jurisdiction because the Coalition's claims are not ripe for adjudication. Pre-enforcement challenges like these require a showing that the claims are fit for review and that delaying judgment would cause hardship for the plaintiff. But the Coalition's members are not in immediate danger of enforcement, and would not be threatened with the type of significant penalties that could make a pre-enforcement challenge ripe even if they were.

If this Court has subject-matter jurisdiction, it should order a more definite statement because of the Coalition's failure to comply with Federal Rule of Civil Procedure 10(b). The first count of the Complaint improperly combines two distinct causes of action—a procedural due process claim and a First Amendment claim.

## ARGUMENT

### I.   The Coalition Lacks Standing To Bring This Lawsuit.

As the Supreme Court's recent decisions highlight—in *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (*per curiam*), for example, the Court *sua sponte* vacated a decision because the court of appeals failed to conduct an adequate standing analysis—establishing standing is a critical hurdle before the Coalition's claims may proceed.  *See also Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1949-56 (2019) (dismissing appeal for lack of standing).  Yet under a fair reading of the Complaint, this case seeks to stretch the limits of the injury-in-fact requirement and associational standing beyond what Article III will bear.  This Court thus lacks subject-matter jurisdiction and should dismiss the Complaint with prejudice.

Because "federal courts are courts of limited jurisdiction," *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (citation and brackets omitted), their jurisdiction is limited to "cases" and "controversies."  U.S. Const. art. III, § 2.  For a case or controversy to exist, the plaintiff must have standing.  *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011) (citation omitted).  This Court "may look beyond the complaint" to "determine if there are facts to support the jurisdictional allegations," *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citation omitted), but the plaintiff bears the burden of establishing it, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

As an organization, the Coalition "can assert standing either in its own right or as a representative of its members."  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (citation

5

omitted).  Here, the Coalition does not and cannot assert standing in its own right.  The Complaint seeks relief on behalf of the Coalition's 14 "domestic-violence program" members only, Compl. ¶ 4, and it does not allege that Section 61-7-14(d) could apply to the Coalition directly.  Jurisdiction thus turns on whether the Coalition can establish associational standing.

"[A]n association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual[] members' participation in the lawsuit."  *Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1268 (2015) (citation omitted; emphasis removed).  Even assuming that neither the claims asserted nor the relief requested require individual members' participation in the lawsuit, the Coalition cannot satisfy the first two prongs of this test:  Its members lack standing to sue in their own right, and its challenge to the Inquiry Provision is not germane to its purpose.

## A.     The Coalition's Members Lack Standing To Sue On Their Own Behalf.

The Coalition fails the first prong of the associational-standing test because its members lack standing to sue on their own behalf.  "[T]he irreducible constitutional minimum of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).[2]   Here, the Coalition's members could not make these showings because they are not facing enforcement actions, nor is there a credible threat of future enforcement.

"An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent"; by contrast, any injury the Coalition's members could assert would be "conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).   And this standard is particularly demanding in pre-enforcement challenges like these, where the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).   The Complaint cannot satisfy this standard.

1.   The Coalition alleges that its members engage in conduct that could violate Section 61-7-14(d), including prohibiting firearms in vehicles in their parking lots and asking whether vehicles contain firearms. *E.g.*, Compl. ¶ 46.   Yet although "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," can sometimes form a basis for standing, under this theory a plaintiff must still establish "a credible threat of prosecution." *Susan*

---

[2] Although standing requirements are somewhat relaxed in the First Amendment context, *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (collecting cases), that relaxation does not salvage the Complaint because the doctrine deals with "*prudential* barriers to standing, not the mandates of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. 149, 161 n.2 (1990) (citations omitted).

*B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).  There is no credible threat of prosecution constituting injury in fact here.

Multiple Supreme Court decisions show that past enforcement action is a key factor when analyzing whether a plaintiff has shown a credible threat of enforcement in the future.  In *Susan B. Anthony List*, "a history of past enforcement" was the primary reason the Court held that the plaintiff's allegations of future enforcement sufficient.  573 U.S. at 164.  Similarly, in *Steffel v. Thompson*, 415 U.S. 452 (1974), the Court relied on "[t]he prosecution of petitioner's handbilling companion" when determining that a plaintiff's alleged threat of prosecution for distributing handbills at a shopping mall was credible.  *Id.* at 459.  And more recently, the Court found a credible threat of prosecution in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), relying on the fact that the government "charged about 150 persons with violating [a statute], and that several of those prosecutions involved the enforcement of the statutory terms at issue."  *Id.* at 16 (citation omitted).  Here, the Coalition cannot point to enforcement of Section 61-7-14(d) against any domestic violence shelter—nor, for that matter, enforcement against *any* business or employer—much less over 150 enforcement actions like in *Humanitarian Law Project*.

Indeed, the Complaint does not even allege sporadic enforcement.  In *Ellis v. Dyson*, 421 U.S. 426 (1975), for instance, the plaintiffs challenging a Dallas loitering statute showed that "an average of somewhat more than two persons per day were arrested in Dallas during seven specified months in 1972 for the statutory loitering offense."  *Id.* at 434.  Yet even this record of enforcement was inconclusive; the Court

8

remanded the case so the district court could make more factual findings to help determine whether a credible threat of prosecution *currently* existed.  *See id.* at 434-35.  The Court directed the district court "to examine the current enforcement scheme" to see if a "genuine threat" existed.  *See id.* at 434.  The Coalition's inability to meet the Article III threshold should be even more apparent here, where the Complaint alleges absolutely no enforcement history—current or otherwise.

Unsurprisingly because of this Supreme Court precedent, the Fourth Circuit very recently relied on evidence of prior governmental action to find a credible threat of future injury—even in a context that did not involve a statutory violation.  In keeping with the rule requiring a credible threat of enforcement action without actual, current harm—something sorely missing here—in *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), the Fourth Circuit held that the plaintiff satisfied the injury-in-fact requirement because the governmental official had previously taken the same type of adverse action against the plaintiff for which he was seeking relief.  *Id.* at 678; *see also Cooksey v. Futrell*, 721 F.3d 226, 236 (4th Cir. 2013) (plaintiff received call from enforcement authority conveying that it had statutory authority to stop plaintiff's actions).

Finally, other courts of appeals have concluded that past enforcement action is a critical factor when determining whether a credible threat of future enforcement exists.  In *New Hampshire Hemp Council, Inc. v. Marshall*, for example, the First Circuit looked to the government's prior enforcement action against a California cooperative when holding that there was no "reason to doubt the government's zeal

in suppressing any activity it regards as fostering marijuana use." 203 F.3d 1, 5 (1st Cir. 2000) (citing *United States v. Oakland Cannabis Buyers' Cooperative*, 190 F.3d 1109 (9th Cir. 1999)).

The Coalition simply cannot satisfy these standards. The Coalition concedes that Defendant has not enforced Section 61-7-14(d) against any of its members. Indeed, Defendant has not exercised his Section 61-7-14(f) enforcement power since the statute's enactment almost 14 months ago. And Defendant has no plans to enforce Section 61-7-14(d) against the Coalition's members without citizen complaints—which he has not received against any business or entity statewide. The rationale for finding a credible threat of *future* prosecution is not present here, and because the Complaint alleges no *present* injury, it fails for lack of standing.

2.      The Coalition likewise cannot establish standing because of any alleged chilling effects of Section 61-7-14(d). *Cf. Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (discussing chilling-effect standing theory). The Coalition alleges that its members have self-censored their speech after the Act's effective date by no longer asking whether individuals' vehicles contain firearms. *E.g.*, Compl. ¶¶ 79-80. These allegations are not enough to overcome the lack of a credible threat of enforcement to show that its members would have standing to sue on their own.

The Supreme Court has explained that "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum*, 408 U.S. 1, 13-14

10

(1972) (citation omitted).  Thus, a plaintiff must show that its decision to self-censor its speech because of a challenged statute is "objectively reasonable."  *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 F. App'x 122, 129 (4th Cir. 2018) (quoting *Cooksey*, 721 F.3d at 229 (emphasis removed)).  Even taking the allegations in the Complaint as true, however, the Coalition members' decisions to censor their own speech would not pass the "objectively reasonable" test.  As discussed above, Defendant has not enforced Section 61-7-14(d) against any employer or business.  Total lack of enforcement of a statute makes it likely that corresponding self-censorship is unreasonable.  *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011); *Am. Civil Liberties Union v. The Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) (likelihood of enforcement action "is an important factor in determining whether" self-censorship is objectively reasonable).

The Fourth Circuit's recent decision in *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) further shows the importance of policing for reasonable self-censorship— and why the Coalition lacks standing under that framework.  Under the chilling-effect theory "a credible threat of enforcement is critical; without one, a putative plaintiff can[not] establish . . . an objectively good reason for refraining from speaking and self-censoring instead."  *Id.* at 176 (citing *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 98 (1st Cir. 2006)).  In *Abbott*, it was fatal that the plaintiffs could "point to no evidence of prior sanctions under [a relevant policy]—against them or anyone else," *id.*, and that the evidence showed "neither investigation nor sanction was forthcoming," *id.* at 177.  There was also no guarantee that this lack of enforcement

11

action would continue.  *Id.*  Even so, the Fourth Circuit emphatically held that the plaintiffs lacked standing to maintain the action under the chilling-effect theory:  The court found plaintiffs' averments about possible future enforcement action lacking, especially compared to a case in which there had been an "explicit warning" of potential enforcement action.  *Id.* (quoting *Cooksey*, 721 F.3d at 237).  The Fourth Circuit affirmed the district court's order dismissing the plaintiffs' lawsuit for want of jurisdiction because it was "up to the plaintiffs to show some objective reason to believe the [defendant] would change its position, and this they ha[d] not done."  *Id.*

The facts here are remarkably similar.  As in *Abbott*, the Coalition cannot point to "evidence of prior sanctions" because Defendant has brought no actions under his Section 61-7-14(f) enforcement authority.   Neither does the Complaint allege imminent "investigation []or sanction" against the Coalition's members, nor any "objective reason" to believe circumstances will change.  *Abbott*, 900 F.3d at 177.  To the contrary, Defendant has received no complaints about alleged violations of Section 61-7-14(d) in over a year.  Under *Abbott*, the Coalition bears the burden of making this showing; because it has failed to do so, it cannot show that the alleged self-censorship is objectively reasonable.

The Eleventh Circuit's similar conclusion in *Wilson v. State Bar of Georgia*, 132 F.3d 1422 (11th Cir. 1998) is also instructive.  In *Wilson*, former attorneys challenged state bar regulations that they alleged chilled their speech in violation of the First Amendment.  Yet the former attorneys "acknowledg[ed] that there was no evidence regarding specific threats or actions" by the defendant "to enforce the"

12

regulations, *id.* at 1428, and the state bar stated that it would be unlikely to enforce the regulations against them. *See id.* at 1428-29. The Eleventh Circuit reiterated that the likelihood of enforcement is an important factor when determining whether self-censorship is objectively reasonable and concluded that the former attorneys' standing theory failed when weighed under that standard. *See id.* at 1429.

Finally, district courts have also held that a plaintiff's self-censorship is objectively unreasonable where it does not "arise from a credible threat of prosecution." *Magee v. United States*, 93 F. Supp. 2d 161, 163 (D.R.I. 2000) (citation omitted). One rationale in *Magee* for the court's holding that the plaintiffs lacked standing was that the Attorney General stated she would not enforce the statute, *see id.*—a feature that is especially relevant because the case was decided six months before the 2000 presidential election, which was certain to lead to a new Attorney General with potentially different enforcement priorities. Nevertheless, the District of Rhode Island explained that for "self-censorship" to satisfy the injury-in-fact requirement, the perceived "threat must be more than imaginary or speculative"; "subjective fears will not suffice." *Id.* at 163-64. Without "a single case in which anyone ha[d] been prosecuted for violating [the relevant statue]," the court found the plaintiffs' alleged fears unreasonable. *Id.* at 164.

*     *     *

The "mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue,"—not even "if they allege an inhibiting effect on constitutionally protected

conduct prohibited by the statute." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *see Bryant v. Woodall*, 363 F. Supp. 3d 611, 618 (M.D.N.C. 2019) ("[T]he mere existence of a criminal statute without more (historical prosecution, official threats of prosecution, recent legislative amendment, or prosecution under related statutes) is ordinarily not enough to establish a credible threat of prosecution." (citation omitted)). Here, there is no historical enforcement of the statute, Defendant has not threated the Coalition's members with enforcement action under Section 61-7-14(f), and the Coalition has alleged no other basis to make its purported self-censorship objectively reasonable. The Coalition's members thus would not be able to establish injury in fact in their own right, and the Coalition likewise lacks standing to sue in their stead.

### B. The Inquiry Provision Challenge Is Not Germane To The Coalition's Purposes.

Even if the Coalition's members had standing to sue on their own behalf, the Coalition would still be unable to mount a free speech challenge to the Inquiry Provision in Section 61-7-14(d)(2)(A) under the second prong of the associational-standing test. At a minimum, this Court should dismiss the Coalition's free speech claim because it is not germane to its organizational purpose "to end personal and institutional violence." Compl. ¶ 4; *cf. In re Kachkar,* 769 F. App'x 673, 681 (11th Cir. 2019) (explaining that a party lacked standing to assert certain claims even though it had standing to assert other claims).

The Inquiry Provision provides that an employer or business may not inquire—either orally or in writing—whether a customer or employee has a firearm in his or

14

her vehicle.  W. Va. Code. § 61-7-14(d)(2)(A).  It is separate from the heart of Section 61-7-14(d) that creates a right to store firearms in a locked vehicle parked in a business's parking lot; *id.* § 61-7-14(d)(1), instead, it protects individuals' privacy when exercising that right.  Thus, while the Coalition's challenges to other aspects of the statute may be germane to its organizational purpose (taking at face value its assertions that the lawful possession of firearms increases the risk of personal and institutional violence), there is nothing in the Complaint alleging how the inability to ask a question about firearm possession advances that interest.

The Fourth Circuit's decision in *Taubman Realty Group Limited Partnership v. Mineta*, 320 F.3d 475 (4th Cir. 2003) is instructive on this score.  There, a shopping mall owner asserted associational standing to bring claims on behalf of those who were employed at or shopped at the mall.  The owner challenged construction of a nearby shopping mall under the National Environmental Policy Act on the theory that construction would harm the employees' and shoppers' safety and health.  The Eastern District of Virginia, however, held that "[b]ecause the interests at stake in [the] case [were] not at all germane to [the shopping mall's] organizational purposes," "it [did] not properly have standing to sue in an associational or representative capacity." *Taubman v. Mineta*, 198 F. Supp. 2d 744, 758 (E.D. Va. 2002).  The Fourth Circuit "fully agree[d] with the district court's reasons," and likewise held that the owner lacked "a sufficient basis for standing." *Taubman*, 320 F.3d at 481.

So too for the Coalition's free speech claim here.  The Coalition's purpose is to decrease violence, not to promote the free exchange of ideas.  Its free speech challenge

is thus only tangentially related to its purpose—the same type of interest at stake in *Taubman*. Just as the Fourth Circuit held that the mall owner's health and safety claim was too far afield from the mall's purpose to "earn income" (even though the mall would suffer profit loss without healthy and safe shoppers and employees), *Taubman*, 198 F. Supp. 2d at 758 n.26 (citation omitted), the Coalition's free expression claim is too attenuated from its mission to prevent personal and institutional violence. And in any event, the Complaint does not attempt to square this circle by alleging that the Inquiry Provision's speech limitations increase personal and institutional violence.

The Fourth Circuit is not alone in holding a tangential relationship to an organization's purpose insufficient to confer associational standing. In *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. United States Department of Agriculture*, for instance, an association's purpose was to promote its rancher members' "international trade and marketing" activities. 415 F.3d 1078, 1104 (9th Cir. 2005) (quotation marks omitted). Yet the association's suit asserted environmental claims. And even though there was some connection between the environment and the ranchers' economic interests—ranchers' operations suffer without a sustainable environment—the Ninth Circuit held that the link was too weak: The group lacked associational standing because "the purported environmental interest" was not germane to its "trade and marketing interests." *Id.* (quotation marks omitted).

16

Similarly, in *Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354 (8th Cir. 1989), a teachers' union raised an Establishment Clause challenge to a program permitting high school students to take classes at sectarian colleges for high-school credits. The Eighth Circuit held that the union lacked associational standing. *Id.* at 1359. Although using taxpayer funds for educational programs at sectarian institutions bore some relation to the union's purpose of promoting education in Minnesota, the court held that associational standing required a tighter fit between the First Amendment claim and the union's mission. *See id.*

The through line in these decisions is that a connection between an organization's purpose and a particular claim is not enough to show that "the interests at stake are germane to the organization's purpose." *Ala. Legislative Black Caucus*, 135 S. Ct. at 1268. The Complaint does not allege a sufficient link between the Inquiry Provision and the Coalition's particular mission. At most, the Free Speech Clause is tangential to this organization's purpose. The Coalition thus lacks associational standing to bring its First Amendment claim.

## II.   The Coalition's Claims Are Not Ripe For Adjudication.

Even if the Coalition had standing to bring this action, this Court would lack subject-matter jurisdiction for another reason: The case is not ripe for adjudication. *See South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("As with standing, ripeness is a question of subject matter jurisdiction." (citation omitted)). "Ripeness is a justiciability doctrine designed to prevent the courts" from "premature adjudication" of disputes before the facts and litigation interests are fully developed. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (citation omitted).

17

Although closely related, standing and ripeness are distinct jurisdictional hurdles. *See United States v. Storer Broad. Co.*, 351 U.S. 192, 197 (1956) (explaining that a plaintiff must have standing and the claim must be ripe for a court to reach the merits of a dispute). And although "ripeness requirements are [] relaxed in First Amendment cases," they still exist. *Cooksey*, 721 F.3d at 240.

To determine whether this case is ripe for adjudication at this time, the Court must consider "the fitness of the issues for judicial decision and the hardship of withholding court consideration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (citation omitted). Here, the claims the Coalition raises are not yet fit for judicial decision, nor will the Coalition's members face hardship if this Court withholds consideration.

The Supreme Court has explained that a claim is ripe under these standards when "a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). Here, this requirement is not satisfied. *First*, as set forth above, there is no credible threat of enforcement that demands an immediate change in the Coalition members' conduct. Without any citizen complaints against a Coalition member—or indeed, any entity in the State—there is no impending threat that Defendant will use his Section 61-7-14(f) enforcement authority against the Coalition's members. *Second*, a violation of Section 61-7-14(d) carries a $5,000 penalty. W. Va. Code § 61-7-14(f)(2). This penalty, if an enforcement action ever

*were* instituted against a Coalition member, is not the type of "serious penalt[y] attached to noncompliance" that *Abbot Laboratories* contemplates.

*Cooksey* further illustrates the type of factors necessary for a pre-enforcement challenge to be ripe for review—which are not present here. There, the Fourth Circuit held that claims were ripe for adjudication because the enforcement agency had told the plaintiff "that he was required to change [his website] in accordance with the red-pen review or face penalties." *Cooksey*, 721 F.3d at 241. In other words, the immediacy of the plaintiff's concerns in *Cooksey* was backed up with objective evidence. The Coalition has alleged no threats of enforcement or even discussions with the Office of the Attorney General about Section 61-7-14.

A First Circuit decision also suggests that the Coalition's claims are not ripe for adjudication. In *Reddy v. Foster*, 845 F.3d 493 (1st Cir. 2017), the plaintiffs challenged a New Hampshire statute that permitted buffer zones around abortion clinics. But because no buffer zones had actually been established yet, the First Circuit held that the plaintiffs were not required to immediately refrain from conduct that the statute prohibited. *Id.* at 505. Similarly, the Coalition's members do not currently face the prospect of serious enforcement action under Section 61-7-14(d), and this Court thus lacks subject-matter jurisdiction over the Complaint.

## III.   Alternatively, This Court Should Order A More Definite Statement.

If this Court determines that it has subject-matter jurisdiction—over any or all of the Coalition's claims—it should order a more definite statement because of the Coalition's failure to comply with Federal Rule of Civil Procedure 10(b).

Federal Rule of Civil Procedure 12(e) must be "read in conjunction" with "the general rules for pleading." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973). These general rules require that separate causes of action be pled in separate counts. *See* Fed. R. Civ. P. 10(b). As the Ninth Circuit has explained, "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Bautista v. L.A. Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).

The Coalition improperly links separate causes of action in a single count. It asserts four separate causes of action, each seeking a declaration that West Virginia Code § 61-7-14(d) is unconstitutional and an injunction barring Defendant from enforcing the statute. But Count I fluctuates between challenging the statute's overall specificity and its speech restrictions. *See* Compl. ¶¶ 73-83. Including multiple causes of action in a single count requires an amended pleading to promote clarity and better allow for a responsive answer. *See Cunningham v. LeGrand*, 2011 WL 1807360, *2 (S.D. W. Va. May 10, 2011); *see also Nat'l Union Fire Ins. Co. of Pittsburg v. Ferguson Enters., Inc.*, 2014 WL 12588684, *2 (E.D. Va. July 8, 2014) (confusion results when multiple claims are presented in a single count of a complaint). Thus, a more definite statement is warranted if this Court has subject-matter jurisdiction over the Complaint.

## CONCLUSION

This Court should dismiss the Complaint with prejudice for want of jurisdiction or, in the alternative, order a more definite statement.

20

DATED: August 5, 2019   Respectfully submitted,

COUNSEL FOR PATRICK J. MORRISEY, in his official capacity as Attorney General for the State of West Virginia

PATRICK MORRISEY
 ATTORNEY GENERAL

<u>/s/ Lindsay S. See</u>
Lindsay S. See (WV Bar #13360)
 *Solicitor General*
Steven A. Travis (WV Bar #10872)
 *Deputy General Counsel*
Douglas P. Buffington, II (WV Bar #8157)
 *Senior Deputy Attorney General*
Office of the West Virginia Attorney General
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Lindsay.S.See@wvago.gov
Steven.A.Travis@wvago.gov
Doug.P.Buffington@wvago.gov