**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
at Charleston**

| | | |
|---|---|---|
| THE WEST VIRGINIA COALITION AGAINST DOMESTIC VIOLENCE, INC., | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Case No. 2:19-cv-00434 |
| | : | (Judge John T. Copenhaver, Jr.) |
| | : | |
| | : | |
| PATRICK J. MORRISEY, in his official capacity as Attorney General for the State of West Virginia, | : | |
| | : | |
| *Defendant.* | : | |

<u>**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

   I.   The Coalition Lacks Standing. ......................................................... 2

   A.   The Coalition's Members Do Not Face Credible Threat Of Enforcement....... 2

   B.   Any Self-Censorship Is Objectively Unreasonable............................. 10

   C.   The Coalition's Mission Is Not Germane To Its Free Speech Claim............. 12

   II.   This Case Is Not Automatically Ripe For Adjudication If Plaintiff Has Standing.................................................................................. 13

   III.   The Coalition's Complaint Violates Rule 10(b). ................................. 15

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .................................................................................. 14

*Abbott v. Pastides*,
900 F.3d 160 (4th Cir. 2018) .............................................................. 11, 12

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982) .................................................................. 8

*Ala. Legislative Black Caucus v. Alabama*,
135 S. Ct. 1257 (2015) ............................................................................ 2

*American Civil Liberties Union v. The Florida Bar*,
999 F.2d 1486 (11th Cir. 1993) .............................................................. 11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex, Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) .................................................................. 13

*Bauer v. Shepard*,
620 F.3d 704 (7th Cir. 2010) .............................................................. 14, 15

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016) .................................................................... 8

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) .................................................................. 12

*Cunningham v. LeGrand*,
2011 WL 1807360 (S.D.W. Va. May 10, 2011) .................................... 15

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) ............................................................. 9, 10

*Eisenstadt v. Baird*,
405 U.S. 438 (1972) .................................................................................. 4

*Ellis v. Dyson*,
421 U.S. 426 (1975) .................................................................................. 3

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*FW/PBS, Inc. v. Dallas,*
  493 U.S. 215 (1990) ................................................................................................. 2

*Hedges v. Obama,*
  724 F.3d 170 (2d Cir. 2013) ................................................................................... 8

*International Union, United Automobile, Aerospace &*
  *Agricultural Implement Workers of America v. Brock,*
  477 U.S. 274 (1986) ............................................................................................. 13

*Laird v. Tatum,*
  408 U.S. 1 (1972) ......................................................................................... 10, 12

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................... 9, 10

*Magee v. United States,*
  93 F. Supp. 2d 161 (D.R.I. 2000) ......................................................................... 5

*Mangual v. Rotger-Sabat,*
  317 F.3d 45 (1st Cir. 2003) ................................................................................... 8

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................................................. 11

*Mink v. Suthers,*
  482 F.3d 1244 (10th Cir. 2007) ............................................................................ 6

*Minnesota Federation of Teachers v. Randall,*
  891 F.2d 1354 (8th Cir. 1989) ............................................................................. 13

*Mobil Oil Corp. v. Attorney General of Virginia,*
  940 F.2d 73 (4th Cir. 1991) ........................................................................... 6, 11

*National Organization for Marriage, Inc. v. Walsh,*
  714 F.3d 682 (2d Cir. 2013) ................................................................................... 8

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ............................................................................................... 3

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*People for the Ethical Treatment of Animals, Inc. v. Stein*,
737 F. App'x 122 (4th Cir. 2018) ............................................................... 11

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
199 F.3d 26 (1st Cir. 1999) ......................................................................... 14

*Ranchers Cattlemen Action Legal Fund United Stockgrowers
of America v. United States Department of Agriculture*,
415 F.3d 1078 (9th Cir. 2005) ............................................................. 12, 13

*Reddy v. Foster*,
845 F.3d 493 (1st Cir. 2017) ....................................................................... 14

*Siegel v. U.S. Dep't of Treasury*,
304 F. Supp. 3d 45 (D.D.C. 2018) ............................................................... 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .................................................................................... 14

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...................................................................................... 3

*United States v. Storer Broad. Co.*,
351 U.S. 192 (1956) .................................................................................... 13

*Virginia Society for Human Life, Inc. v. Fed. Election Comm'n*,
263 F.3d 379 (4th Cir. 2001) ........................................................................ 7

*Virginia v. American Booksellers Association, Inc.*,
484 U.S. 383 (1988) ...................................................................................... 6

*Vt. Agency of Nat. Resources v. United States ex rel Stevens*,
529 U.S. 765 (2000) ...................................................................................... 9

*West Virginia Citizens Defense League, Inc. v. City of Charleston*,
2012 WL 4320983 (S.D.W. Va. Sept. 20, 2012) .................................... 7, 11

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ...................................................................................... 4

v

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Wikimedia Found. v. Nat'l Sec. Agency*,
  857 F.3d 193 (4th Cir. 2017) ...................................................................... 7

**Statute**

West Virginia Code § 61-7-14 ............................................. 1, 2, 3, 4, 6, 9, 10

**Rule**

Federal Rule of Civil Procedure 10 ........................................................... 15

**Other Authority**

Malerie Leigh Bulot *"Bring Your Gun to Work" and You're Fired: Terminated
  Employees' Potential Rights for Violations of Parking Lot Laws*,
  78 La. L. Rev. 989 (2018)..................................................................1

## INTRODUCTION

The West Virginia Coalition Against Domestic Violence, Inc. ("the Coalition") does not dispute that when the West Virginia Legislature enacted West Virginia Code § 61-7-14(d), it joined over 20 other States that have enacted similar protections. Nor does it dispute that every court in the country to consider challenges to these "parking lot" laws has rejected them on the merits—even when they raised claims mirroring the Coalition's theories here. Indeed, although such challenges are frequent, they have just as frequently failed. *See* Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws*, 78 La. L. Rev. 989, 999 (2018).

Nevertheless, the Court should dismiss because the Coalition has not met its burden to establish standing and ripeness in this pre-enforcement challenge to a state statute. Both parties generally agree on the governing legal requirements, citing many of the same cases for determining whether an organization has made out a claim sufficient to satisfy Article III's demands. The parties differ, however, on application of that law. Resolution of the pending motion to dismiss requires answering straightforward questions: whether there is a credible threat of enforcement action; whether self-censorship on the part of the Coalition's members is objectively reasonable; and whether the Coalition's challenge to West Virginia Code § 61-7-14(d)(2)(A) ("the Inquiry Provision") is germane to its mission. Because the answer to all of these questions is no, the Coalition lacks standing to maintain this suit and the case is not ripe for adjudication.

**ARGUMENT**

## I.     The Coalition Lacks Standing.

The Coalition has not met its burden to establish standing to bring this action on behalf of its members.  *See Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1268 (2015).  Its members could not show an injury-in-fact through either a credible threat of future enforcement action or reasonable self-censorship measures, and challenging the Inquiry Provision on free-speech grounds is not germane to the Coalition's purpose.

### A. The Coalition's Members Do Not Face Credible Threat Of Enforcement.

The Coalition concedes that no one has faced an enforcement action under West Virginia Code § 61-7-14(f).  Its argument that it can nonetheless show a credible threat of enforcement gives short shrift to this critical fact.  The Coalition's position likewise cannot be reconciled with the teaching from its own cases that the burden to establish a probability of enforcement does not disappear where the plaintiff challenges a new law.  Unlike the cases the Coalition marshals in its response, there are no factors here pointing toward a likelihood of imminent enforcement action against the Coalition's members.

**1.**  A real, current threat of enforcement is necessary to establish standing for a pre-enforcement challenge, and the Coalition bears the burden of making this showing.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  Further—and despite the Coalition's attempt to downplay this factor—past enforcement action is a critical data point when analyzing whether a plaintiff has shown a credible threat of

2

enforcement in the future. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). The Coalition ignores a key case from the Supreme Court demonstrating how much weight past enforcement action receives—even for statutes of relatively recent vintage. In *Ellis v. Dyson*, 421 U.S. 426 (1975) (cited Mem. 8-9), the Court explained that even evidence showing that "an average of somewhat more than two persons per day were arrested" under a Dallas loitering law "during seven specified months in 1972" might not be enough to ensure that the plaintiffs had standing to challenge the law. *Id.* at 434. Instead, it remanded the case so the district court could more thoroughly "examine the current enforcement scheme" to see if a "genuine threat" of prosecution *currently* existed. *See id.* at 434-35. This decision highlights the importance of past enforcement to the standing inquiry: Even showing that a statute has been enforced consistently at some point does not automatically confer standing on a plaintiff raising a pre-enforcement challenge. *Ellis* also shows that establishing a current threat of prosecution is required for more than just "moribund" statutes. *See* Mem. 8-9. The *Ellis* plaintiffs' civil challenge to the loitering law followed their January 1972 arrest; the law had been amended just eighteen months earlier in July 1970. *Ellis*, 421 U.S. at 427.

As explained in the memorandum in support of Defendant's motion to dismiss, there is no imminent threat of enforcement under Section 61-7-14(d) for the Coalition's members, and no plan to enforce the statute against any entity without

citizen complaints.  *E.g.*, Mem. 3.[1]  To avoid this inconvenient fact, the Coalition argues that the bar for standing is lower in First Amendment pre-enforcement challenges, Opp. 8-9, and that Defendant's statements in this litigation are not binding and there could be a change in enforcement priorities going forward.  Neither argument is persuasive.

The Coalition's first rejoinder fails because the standing argument in the motion to dismiss is premised on Article III's cases or controversies requirement.  *See* Mem. 7 n.2.  And although standing requirements are relaxed in the First Amendment context, *see Eisenstadt v. Baird*, 405 U.S. 438, 446 n.5 (1972) (citation omitted), the Court has emphasized that such relaxation is for only "prudential barriers to standing, not the mandates of Art[icle] III."  *Whitmore v. Arkansas*, 495 U.S. 149, 161 n.2 (1990) (citation omitted).  The fact that the Coalition continually relies on the lower prudential standing burdens in the First Amendment context is

---

[1] The Coalition also relies on two references to the parking lot statute in a publication of the West Virginia Attorney General's Office.  *See* Opp. 9 & n.1.  But this pamphlet—*On The Mark: A Guide to Concealed Handgun Laws in West Virginia*—does not reveal any intent to enforce West Virginia Code § 61-7-14(d) against the Coalition's members.  Rather, *On The Mark* compiles state statutes relating to firearms in a single place as a public service so members of the public need not canvass the West Virginia Code to learn about state gun laws.  It does not discuss Defendant's position on any of the statutes it describes, nor state whether and under what circumstances Defendant may enforce any of these provisions.  Publication of a statutory compilation is not enough to show an intent to actively enforce all code provisions listed inside.  It is certainly not enough to create a credible threat of future enforcement where Defendant has not received citizen complaints about the statute in question, and has no plans to enforce the statute in the absence of citizen complaints.

telling:  It showcases the weakness of its Article III standing argument under the ordinary test outlined above.

The Coalition's argument about non-binding litigation statements and the potential for new enforcement priorities in the future fares no better.  Here again, the Coalition elides a key case analyzing these same factors.  In *Magee v. United States*, 93 F. Supp. 2d 161 (D.R.I. 2000) (cited at Mem. 13), the court found the plaintiff failed to satisfy the injury-in-fact requirement for Article III standing based on the lack of "a single case in which anyone ha[d] been prosecuted for violating [the relevant statute]."  *Id.* at 164.  Attorney General Janet Reno's announcement that she did not intend to enforce the statute further informed the court's standing analysis, *id.* at 163—even though the case was decided just six months before a presidential election that was certain to lead to a new Attorney General who would likely have different enforcement priorities and would not be bound by Attorney General Reno's representations.

The facts in *Magee* are remarkably similar to the facts here.  Defendant does not plan to bring an enforcement action without citizen complaints.  And over 15 months after the statute's effective date, the Office of the West Virginia Attorney General has not received a single citizen complaint.

**2**.  In contrast to its silence regarding *Ellis* and *Magee*, the Coalition hangs its hat on a series of cases that it argues supports presuming non-moribund statutes will be enforced.  Careful examination of these cases, however, shows that there were other factors at play buttressing the claims of credible threat of enforcement action.

None of them teach that the mere fact a statute is in effect allows a plaintiff to bypass its burden to make this showing based on all the facts.  To the contrary, "presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue,"—not even "if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).

First, the Supreme Court's decision in *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393 (1988) is distinguishable because in that case "[t]he State ha[d] not suggested that the newly enacted law [would] not be enforced." *Id.* at 393.  There were also no other factors that gave the Court "reason to assume otherwise." *Id.*  Defendant has made such a suggestion here, explaining that Section 61-7-14(d) will not be enforced absent citizen complaints.

The Coalition's reliance on Fourth Circuit cases suffers similar defects.  The Coalition cites *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73 (4th Cir. 1991), for instance, to support its argument that the mere existence of a statute deserves considerable weight when determining the credibility of potential enforcement action.  Opp. 6-7.  The portions of the opinion the Coalition quotes, however, come *after* the Fourth Circuit explained that the Virginia Attorney General did not "disclaim[] any intention of exercising her enforcement authority," at any time or for any reason. *See Mobil*, 940 F.2d at 76.

Similarly, although the Fourth Circuit held in another case that a plaintiff had standing to challenge an FEC regulation even though the agency stated that it would

not enforce it, a key aspect of the court's holding was the fact that the FEC's statement did not fully protect the plaintiff. *Virginia Society for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 389 (4th Cir. 2001), *overruled on other grounds*, *The Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544 (4th Cir. 2012). The FEC's assurance of non-enforcement did not extend outside the Fourth Circuit, and the plaintiff alleged that it "planned to place its advertisements on at least one radio station whose broadcast is received in the District of Columbia." *Id.*

Turning next to this court, *West Virginia Citizens Defense League, Inc. v. City of Charleston*, 2012 WL 4320983 (S.D.W. Va. Sept. 20, 2012) resolved standing claims in an action challenging various municipalities' ordinances restricting or placing conditions on firearm sales and possession. In contrast to this action, the complaint contained specific allegations that the plaintiffs were likely to face the force of the challenged ordinances. Standing was proper to challenge a waiting-period requirement, for instance, based on a declaration stating that the plaintiff tried to buy a firearm, but a store employee informed him that he could not do so until after the 72 hours the ordinance required. *Id.* at *2. And with respect to a challenge to carrying firearms in a public building, the plaintiffs had alleged that the city hall "posted warnings about the consequences of carrying of firearms therein, including a threat of 'Criminal Prosecution.'" *Id.* at *3. Not only are facts like these missing from the Coalition's Complaint, but facts beyond the Complaint—specifically, Defendant's representation that he does not intend to enforce the statute without citizen complaints—point in the other direction. *Cf. Wikimedia Found. v. Nat'l Sec. Agency*,

7

857 F.3d 193, 208 (4th Cir. 2017) (explaining that in a factual challenge to standing, as here, courts "may look beyond the complaint" (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Finally, cases the Coalition cites from outside the Fourth Circuit do not require a contrary result. One, in fact, *supports* dismissal based on its holding that non-citizen plaintiffs lacked standing because they did not "show[] a sufficient threat that the government will detain them under" the relevant statutory provision. *Hedges v. Obama*, 724 F.3d 170, 174 (2d Cir. 2013). The Coalition should be held to the same standard: It must show a "sufficient threat" of enforcement beyond the bare fact that a statute remains in effect.

The other decisions the Coalition relies on from outside the Fourth Circuit are distinguishable. The individual charged with enforcing the law in *Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) stated that he "would move to shut down" a gambling operation as it violated local law. *Id.* at 325. There is nothing surprising about finding a credible threat of enforcement in response to an express representation like that. Likewise, the plaintiff in *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) "was under actual threat of prosecution by" a police officer. *Id.* at 58. And as for *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013), the Court focused on ripeness alone, not standing.

In short, both binding and persuasive authority supports requiring more for standing than the fact a law is on the books. That factor, after all, is present in every

pre-enforcement challenge. Without additional evidence of credible, imminent enforcement, the Coalition cannot meet its burden here.

**3**. To the extent the Coalition's standing argument turns on the potential for private enforcement under West Virginia Code § 61-7-14, *see* Opp. 1 & 19 n.3, that provision is not sufficient to establish standing, either.

Standing requires "a causal connection between the injury and the conduct complained of," and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks omitted). These two elements, causation and redressability, "typically overlap as two sides of a causation coin, because after all if a government action causes an injury, enjoining the action will usually redress that injury." *Siegel v. U.S. Dep't of Treasury*, 304 F. Supp. 3d 45, 52 (D.D.C. 2018) (internal citations omitted). Further, these requirements turn on the existence of "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Vt. Agency of Nat. Resources v. United States ex rel Stevens*, 529 U.S. 765, 771 (2000) (internal citations omitted).

Here, any private lawsuits seeking to enforce the parking lot bill would be entirely separate from Defendant's enforcement decisions, which means any injuries from these hypothetical lawsuits would not be traceable to Defendant's conduct, nor could a court order directed to Defendant redress this potential harm. Rather, this case is like *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015), where the Eighth Circuit dismissed for lack of standing a challenge to a statute

that authorized private civil actions for damages. *Id.* at 958. The threat of future enforcement was not causally connected to the actions of any public officials under this regime, so the feared injury was not fairly traceable to the state Attorney General, and a favorable decision would not assuage that fear. *Id.* The same is true here to the extent the Coalition relies on the statute's private enforcement provisions to establish standing. Simply put, causation is not satisfied where the injury is "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks omitted).

\*      \*      \*

The law is clear: There must be a credible threat of enforcement action for a party to have standing to bring a pre-enforcement action challenging a statute. Mere existence of a statute is a necessary piece of any pre-enforcement action. It is not, however, the end of the standing inquiry. Here, the lack of past enforcement action together with Defendant's statements in this litigation deserve significant weight when deciding this motion to dismiss. The Coalition has failed to carry its burden to show that its members face a credible threat of enforcement under Section 61-7-14(d).

### B. Any Self-Censorship Is Objectively Unreasonable.

The Coalition's alternate approach to showing that its members are injured by Section 61-7-14(d) is to rely on their purported self-censorship in response to the law. "Allegations of subjective chill," however," cannot "substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (citation omitted). The Court should reject this argument because the Coalition cannot show that the self-censorship it alleges is "objectively reasonable."

10

*People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 F. App'x 122, 129 (4th Cir. 2018).

The Coalition relies on *Mobil Oil* to argue that a person need not "violate the law and wait to see what happens" to establish standing. Opp. 13 (quoting 940 F.2d at 76). But although *Mobil Oil* addressed a pre-enforcement challenge, the court referenced "self-censor[ship]" only in connection with the plaintiff's "actual and well-founded fear that the law will be enforced." 940 F.2d at 76 (quotation mark omitted). *Mobil Oil* is thus consistent with the Fourth Circuit's "objectively reasonable" test described in more recent cases like *Stein*: Self-censorship on its own may not be objectively reasonable, but those concerns can fall away where the evidence shows a threat of enforcement grounded in more than the fact a law exists. Similarly, this Court's decision in *West Virginia Citizens Defense League* focused primarily on credible threat of enforcement, and its brief reference to self-censorship quoted the same language from *Mobil Oil*. 2012 WL 4320983 at *8. And for its part, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) was a patent-infringement declaratory judgment action, not a pre-enforcement challenge to a state statute.

The Coalition also glosses over cases supporting the distinction between subjective chill and objectively reasonable self-censorship. For example, in *American Civil Liberties Union v. The Florida Bar*, the Eleventh Circuit explained that the likelihood of enforcement action "is an important factor" when threading this needle. 999 F.2d 1486, 1492 (11th Cir. 1993). The Coalition offers no response. The Coalition does attempt to distinguish *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) because

11

the defendant university had "decid[ed] against disciplinary action in response to student complaints." Opp. 14 (quoting *Abbott*, 900 F.3d at 177). This, however, was not the only factor in the court's analysis. The plaintiffs also could "point to no evidence of prior sanctions under [a relevant policy]—against them or anyone else," *Abbott*, 900 F.3d at 176, and the evidence showed "neither investigation nor sanction was forthcoming," *id.* at 177. The court likewise emphasized the lack of "explicit warning" of potential enforcement action. *Id.* (quoting *Cooksey v. Futrell*, 721 F.3d 226, 237 (4th Cir. 2013)). Because the same is true here, the Coalition cannot use allegations of self-censorship to shore up its inability to establish "a threat of specific future harm." *Laird*, 408 U.S. at 13-14.

### C. The Coalition's Mission Is Not Germane To Its Free Speech Claim.

The Coalition also falters at the second prong of the associational standing test because its challenge to the Inquiry Provision is not germane to its purpose. The Coalition argues that "[t]he ability to ask whether visitors are armed is directly related to the Coalition's mission of ensuring safety and security for victims of domestic violence." Opp. 14. Yet unlike the Coalition's challenge to the statute's substantive prohibitions against barring firearms in locked vehicles in a parking lot, its challenge to the Inquiry Provision sounds in principles of free speech and expression. The Coalition does not try to distinguish cases from the Eighth and Ninth Circuits making clear that this component of associational standing requires a closer fit. In *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. United States Department of Agriculture*, 415 F.3d 1078 (9th Cir. 2005), the court

rejected an attempt by a "trade and marketing" organization to raise a "purported environmental interest." *Id.* at 1104 (quotation marks omitted).  And in *Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354 (8th Cir. 1989), an interest in promoting education was not enough to give a teachers' union associational standing to pursue a First Amendment-based challenge to a program permitting high school students to take classes at sectarian colleges for high-school credits.  *Id.* at 1359.

Likewise, the two cases the Coalition relies on substantively do it no favors. Lobbying against a statute is not automatic proof that a lawsuit challenging it is germane to an organization's purpose: Lobbying—or "work[ing] for legislation"—was the stated purpose of the association at issue in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 286 (1986).  And in the second case, the Fifth Circuit did not meaningfully analyze whether the lawsuit was germane to the association's purpose because the defendant forfeited this argument on appeal.  *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex, Med. Bd.*, 627 F.3d 547, 551 & n.2 (5th Cir. 2010).

## II.   This Case Is Not Automatically Ripe For Adjudication If Plaintiff Has Standing.

The Court should also grant the pending motion because the Coalition's claims are not ripe.  The Coalition suggests that if it has standing to maintain this action then the case is also ripe for adjudication.  Opp. 18.  But standing and ripeness are distinct jurisdictional hurdles.  *See United States v. Storer Broad. Co.*, 351 U.S. 192, 197 (1956).  To be sure, there is some overlap between the two inquiries, and the failure to demonstrate a credible threat of enforcement action and objectively

reasonable self-censorship are also relevant to the ripeness of the Coalition's claims. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977); *Reddy v. Foster*, 845 F.3d 493, 505 (1st Cir. 2017). Nevertheless, ripeness is an additional requirement that looks specifically at whether a claim is fit for judicial decision and weighs "the hardship of withholding court consideration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (citation omitted). The Coalition's claims do not meet that standard.

Relying on a decision from the First Circuit, the Coalition argues that its members need only "have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." Opp. 19 (quoting *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999)). But interpreting *Rhode Island Association of Realtors* to set forth the only requirements for ripeness would bring the First Circuit into conflict with *Abbott Laboratories*, which focuses not only on an entity's subjective decisions, but the external factors bearing on the reasonableness of those decisions as well. *Abbott Labs.*, 387 U.S. at 153.

A decision cited by the Coalition highlights the point. In *Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010) (cited at Opp. 7), the Seventh Circuit held that a challenge to provisions in Indiana's Code of Judicial Conduct that arguably infringed judicial candidates' expressive rights was not ripe for adjudication. It explained that the state judicial commission had not brought an enforcement action against the plaintiff for engaging in the conduct at issue, and indeed had never brought such an enforcement action. *Id.* at 709. The same is true here; the prospect of enforcement

under Section 61-7-14(d) is too speculative to warrant review.  *See id.*  Similarly, *Bauer* undercuts the Coalition's argument that, because its members "are just one complaint away from an enforcement action," Opp. 9 n.1, the lack of past or imminent future enforcement is irrelevant.  Even though the plaintiff in *Bauer* was also but one commission action away from enforcement, the Seventh Circuit dismissed the claim as unripe.  This court should do the same.

## III.    The Coalition's Complaint Violates Rule 10(b).

Finally, even if this Court has subject-matter jurisdiction over some or all of the Complaint, it should order a more definite statement for failure to comply with Federal Rule of Civil Procedure 10(b).  This Court's decisions are clear:  Grouping several causes of action in a single count requires an amended pleading.  *See Cunningham v. LeGrand*, 2011 WL 1807360, *2 (S.D.W. Va. May 10, 2011).

The Coalition argues that its first count is "clear" because it challenges two provisions of the statute on free-speech grounds, and that the count's additional reference to a void-for-vagueness challenge should be understood to be part of that First Amendment argument, and not a freestanding claim.  Opp. 20.  Yet either Count I improperly groups separate causes of action in a single count, *Cunningham*, 2011 WL 1807360 at *2, or the lack of clarity about the Coalition's legal theory—or theories—could lead to confusion throughout the litigation.  In any event, if Count I is truly limited to a free-speech challenge under the First Amendment, there is no harm in making that clear in an amended proceeding.  Thus, if this Court has subject-matter jurisdiction, it should order a more definite statement.

## CONCLUSION

This Court should dismiss the Complaint with prejudice for want of jurisdiction or, in the alternative, order a more definite statement.


DATED: September 17, 2019          Respectfully submitted,

COUNSEL FOR PATRICK J. MORRISEY, in his official capacity as Attorney General for the State of West Virginia

PATRICK MORRISEY
  ATTORNEY GENERAL

/s/ Lindsay S. See
Lindsay S. See (WV Bar #13360)
  *Solicitor General*
Steven A. Travis (WV Bar #10872)
  *Deputy General Counsel*
Douglas P. Buffington, II (WV Bar #8157)
  *Senior Deputy Attorney General*
Office of the West Virginia Attorney General
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
(304) 558-2021
Lindsay.S.See@wvago.gov
Steven.A.Travis@wvago.gov
Doug.P.Buffington@wvago.gov

16