IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
at Charleston

| | | |
|---|---|---|
| THE WEST VIRGINIA COALITION AGAINST DOMESTIC VIOLENCE, INC., | : : : | |
| *Plaintiff,* | : : | |
| v. | : : : | Case No. 2:19-cv-00434 (Judge John T. Copenhaver, Jr.) |
| | : : | |
| PATRICK J. MORRISEY, in his official capacity as Attorney General for the State of West Virginia | : : : : | |
| *Defendant.* | : : | |

**CONSENT MOTION TO ENTER PROTECTIVE ORDER,**
**AND MEMORANDUM IN SUPPORT**

Plaintiff, the West Virginia Coalition Against Domestic Violence, Inc. (the "Coalition"), respectfully requests that the Court enter the proposed stipulated protective order attached as Exhibit 1. The parties have met and conferred, as instructed by the Court at the September 20, 2019 scheduling conference, concerning a protective order to govern the use and disclosure of information pertaining to the security of licensed domestic-violence shelters that are members of the Coalition. In order to protect the security of the individual shelters and their residents, the Coalition requests that the Court enter an order authorizing and requiring the parties to anonymize references that would reveal the identity of individual shelters to which sensitive security information pertains, as described in more detail below. This approach will address the security concerns faced by the shelters, while also serving the interest of maximizing public access to open judicial proceedings. Defendant Patrick J. Morrisey, the Attorney General for the State of West Virginia, consents to this motion, and to the proposed stipulated protective order.

1

## BACKGROUND

The Coalition is comprised of 14 member programs, each of which is an independent non-profit licensed as a domestic violence program by the West Virginia Family Protection Services Board. *See* Declaration of Joyce Yedlosky attached as Exhibit 2, ¶2. Coalition members provide a number of critical services to victims of domestic abuse and their children, including but not limited to temporary emergency housing. *See id.*

The time when a victim of domestic abuse attempts to leave her abuser is one of the most dangerous times for her and her children, and is one indicator that she faces a heightened risk of lethal violence from her abuser. *See id.* ¶4. Because Coalition members provide services to victims during this time of heightened risk, they operate in an environment that poses special dangers to the safety of their clients, staff, and facilities. *See id.*

These risks are real and not imagined: abusers regularly loiter around Coalition members' shelters in an effort to intimidate victims, and on some occasions have gone so far as to commit acts of vandalism on shelter property, to attempt entry under false pretenses, and to threaten violence against shelters. *See id.* ¶5. Abusers also regularly attempt to manipulate law enforcement and social services into confirming their victim's whereabouts, further underscoring the lengths they will go to threaten their victim. *See id.* Several instances, such as the incidents involving abusers attempting to enter shelters by pretending to be someone else, reflect a deliberate attempt by abusers to exploit shelters' perceived security vulnerabilities in order to access and harm their victim and/or shelter staff. *See id.*

Coalition members take these risks very seriously, and have developed a variety of approaches to prevent and mitigate ongoing security threats and to ensure the safety of their clients and staff. Among other things, Coalition members have implemented policies and procedures to

strictly control access to their shelters, do not publicly disseminate shelter addressees, and have put in place a range of physical security measures from door locks and intercoms to surveillance cameras and glass-break sensors. *See id.* ¶6.

Public disclosure of the specific security policies, procedures, and physical security measures that particular Coalition members have adopted at their shelters and other facilities would compromise the security of those facilities and jeopardize the safety of those member programs' clients and employees. *See id.* ¶ 7. Disclosure would do this by increasing the chance that an abuser will learn of a specific shelter's security measures and thereafter exploit vulnerabilities to harm their victim or others in the shelter. *See id.* Abusers have attempted to do so in past incidents, *see id.* at ¶5, and the threat that abusers pose to victims and others at Coalition members' facilities is ongoing, *see id.* at ¶ 6-7.

## ARGUMENT

Under the Federal Rules of Civil Procedure, the Court may enter a protective order "for good cause" to protect a party or other person from oppression or undue burden. *See* Fed. R. Civ. P. 26(c)(1); *see also Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 337-38 (4th Cir. 2017) (explaining that district court may enter protective order upon showing of good cause). Here, good cause exists to protect information identifying the specific security policies, procedures, and physical security measures at specific domestic violence shelters because public disclosure of this information could endanger the safety of those shelters and the people who live, work, and receive services there. Good cause further exists to guard against the public disclosure of information that would identify shelter employees and locations, for the same reason.

Shelters' security policies and procedures, which concern things like the prohibition of weapons on shelter property and how they control intake and access are at the heart of Plaintiff's

claims that the Parking Lot law undercuts its members' existing safety measures. Information concerning shelters' physical security measures is also germane because (among other things) it reflects the seriousness of both the threats that shelters face and the efforts they make to ensure the safety of clients and staff. The names of shelter staff (whose identities would in turn serve to identify their employer) may become part of the record to the extent they authenticate or describe the policies, procedures, or security measures referenced above. Plaintiff therefore anticipates that this information may come before the Court in future briefing, should this case progress.

Although broad allegations of harm that are unsubstantiated by specific examples or articulated reasoning are insufficient to demonstrate good cause, *see Springs*, 684 F. App'x at 338, here the Coalition has articulated a specific harm that is both ongoing and illustrated by past examples. That harm is that public disclosure of Coalition members' locations, security policies, and physical security measures may facilitate an abuser attempting to enter a shelter in order to threaten their victim or other shelter occupants and staff. This is not mere speculation; abusers have a long and ongoing track record of trespassing at shelters and attempting to breach shelter security in order to threaten or harm victims they believe are living or receiving services there.

Courts routinely find that a specifically articulated security risk such as this is sufficient justification for the entry of a protective order. *See, e.g.*, *Butler v. Bessinger*, 2018 WL 387999, *1-2 (D.S.C. Jan. 11, 2018) (issuing protective order regarding prison policy whose disclosure would have jeopardized staff safety); *Slager v. S. States Police Benevolent Ass'n, Inc.*, 2016 WL 4123700, at *4 (D.S.C., Aug. 3, 2016) (issuing protective order regarding disclosure of home address of party whose home had previously been firebombed); *Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D. Va. 1994) (describing "pre-existing protective order which was issued due to personal safety concerns raised by the plaintiffs"); *cf. Floren v. Whittington*, 217 F.R.D.

4

389, 392 (S.D.W. Va. 2003) (noting that concerns regarding threats to officer safety arising from production of officer disciplinary records could be adequately addressed through protective order and/or redactions). The Coalition respectfully asks the Court to find that similar safety concerns justify the entry of a protective order in this case.

Here, the Coalition believes that the appropriate way to guard against this harm is by anonymizing references to individual shelters and their employees, through the use of redactions and pseudonyms in public filings, *i.e.*, referring to a specific shelter by "Program A" and to shelter employees by their job titles and redacting shelter and employee names in exhibits. This will prevent specific security details from being associated with a specific domestic-violence shelter. This approach will also minimize the need for sealed filings and redactions, should the case progress to further briefing. It is also an approach well within the Court's broad discretion to decide not only "when a protective order is appropriate" in light of the circumstances, but also "what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Floren*, 217 F.R.D. at 392 (ordering party to prepare redactions of sensitive documents); *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016) (issuing a protective order prohibiting use of parties' and witnesses' real names in lawsuit regarding campus sexual assault); *Lamarr v. Jackson*, 2015 WL 2401390, at *2 (N.D.W. Va. May 20, 2015) (directing production of prison use-of-force reports with prisoner names changed to pseudonyms).

## CONCLUSION

For the reasons set forth above, Plaintiff, with Defendant's consent, respectfully requests that the Court enter the proposed stipulated protective order attached as Exhibit 1.

Respectfully submitted,

*s/ J. David Fenwick*

J. David Fenwick (W. Va. Bar No. 6029)
Lucas R. White (W. Va. Bar No. 12501)
**GOODWIN & GOODWIN, LLP**
300 Summer Street, Suite 1500
P.O. Box 2107
Charleston, WV 25328
(304) 346-7000
*jdf@goodwingoodwin.com*

Deepak Gupta*
Jonathan E. Taylor*
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

Eric Tirschwell*
Alla Lefkowitz*
James Miller*
**EVERYTOWN LAW**
450 Lexington Avenue
P.O. Box 4184
New York, NY 10017
(646) 324-8222
*etirschwell@everytown.org*

*Counsel for Plaintiff The West Virginia Coalition Against Domestic Violence, Inc.*

**Pro hac vice*

October 18, 2019

## CERTIFICATE OF SERVICE

      I hereby certify that on October 18, 2019, I electronically filed the foregoing motion and memorandum of law, and accompanying exhibits, with the Clerk of The United States District Court for the Southern District of West Virginia using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

                                               *s/ J. David Fenwick*
                                               J. David Fenwick

                                               *Counsel for Plaintiff The West Virginia*
                                               *Coalition Against Domestic Violence, Inc.*