UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THE WEST VIRGINIA COALITION
AGAINST DOMESTIC VIOLENCE, INC.,

        Plaintiff,

v.                                   Civil Action No. 2:19-cv-00434

PATRICK J. MORRISEY, in his
official capacity as Attorney
General for the State of West
Virginia,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is the defendant Patrick J. Morrisey's motion to dismiss, filed August 5, 2019.  ECF No. 12.

I.    <u>Factual and Procedural Background</u>

        The mission of the plaintiff, the West Virginia Coalition Against Domestic Violence ("WVCADV"), is "to end personal and institutional violence in the lives of women, children, and men."  Compl. ¶ 21.  The WVCADV is comprised of fourteen incorporated non-profit entities that provide direct services to victims of domestic violence and their children within the parameters of the WVCADV's "principles of unity" and the licensing requirements of the West Virginia Family Protection Services Board.  Compl. ¶ 22.  According to the

WVCADV, due to the risks associated with firearms at domestic violence shelters or outreach offices, the Family Protection Services Board requires licensed domestic violence shelters to have written policies that prohibit weapons within the shelter. Compl. ¶ 41.  All residents must acknowledge and sign a statement that he or she will adhere to the policies.  Compl. ¶ 41.  WVCADV members often add to their policies that weapons, including firearms, are prohibited in parking lot areas.  Compl. ¶ 41.

West Virginia Code section 61-7-14 originally permitted property owners to prohibit the open or concealed carrying of a firearm on their property.  Compl. ¶ 6.  In March 2018, the West Virginia legislature enacted House Bill 4817, which amended West Virginia Code section 61-7-14 ("Parking Lot Amendments") to prohibit property owners from banning firearms in the parking lot areas of their properties.  Compl. ¶ 7.  The statute does not include an exception for domestic violence shelters.  See W. Va. Code § 61-7-14(d); Pl.'s Opp'n Mot. Dismiss 1, ECF No. 18 ("Pl.'s Opp'n").

Specifically, subsections 61-7-14(d)(1) and (d)(4) prevent individuals who own, lease, or otherwise control property from prohibiting firearms in parking lot areas.  W. Va. Code § 61-7-14(d)(1), (4).  Subsections 61-7-14(d)(2)(A) and (B)

("the Inquiry Provisions") prevent individuals who own, lease, or otherwise control property from violating an individual's privacy rights by either inquiring about an individual's firearm in a vehicle or searching for the presence of a firearm in a vehicle when the vehicle is in a parking lot area.  Subsection 61-7-14(d)(2)(C) prevents individuals who own, lease, or otherwise control property from taking any action against any party lawfully possessing a firearm under this section in a parking lot area.  Subsection 61-7-14(d)(3)(B) prohibits employers from conditioning employment on an employee's agreement to not keep a firearm locked in or locked to a vehicle in parking lot areas.  Subsection 61-7-14(f) authorizes enforcement power of the Attorney General to bring an action seeking injunctive relief or civil penalties of up to $5,000 for each violation plus costs and attorney's fees.

The WVCADV alleges that the Parking Lot Amendments affected WVCADV members' policies and practices in four areas: (1) house rules and guidelines for residents; (2) employee agreements and manuals; (3) signs on the property prohibiting weapons; and (4) case-by-case scenarios in which appropriate actions are taken if it is determined that a firearm is or may be present in a vehicle on the property.  Compl. ¶ 42.

Specifically, the WVCADV alleges that one shelter, Program A, had a policy "prohibiting all weapons on its property, including the parking areas under its control" prior to the enactment of the Parking Lot Amendments. Compl. ¶ 46. The policy specifically forbade the possession of weapons on its "property as well as any location or activity where [program] employees are or may be conducting business." Compl. ¶ 47. Additionally, "staff were permitted to ask residents whether they had firearms or other contraband in their vehicles, if they believed such inquiry was warranted." Compl. ¶ 46. After the enactment of the Parking Lot Amendments, Program A changed its policy to say "[w]eapons are strictly prohibited in [Program A's] shelter facility." Compl. ¶ 48. Program A has also "been forced to adopt a temporary policy of not asking any questions about the presence of firearms in cars." Compl. ¶ 50. The plaintiff alleges that "Program A strongly desires to revert to its former policy of prohibiting firearms throughout its property (including its parking areas) and of permitting its staff to enforce this policy including by asking prospective shelter residents whether they have a gun." Compl. ¶ 52. The plaintiff states that "[b]ut for the Parking Lot Amendments, and its concern about incurring large financial penalties, Program A would do so." Id.

4

The WVCADV also alleges that another shelter, Program B, has two relevant policies: an employee policy that prohibits employees from bringing a weapon onto its property and a residential policy that states that weapons "shall not be permitted on the premises of the [program]." Compl. ¶ 55.  The WVCADV indicates that "[p]rior to the enactment of the Parking Lot Amendments, both prohibitions were understood to cover the shelter's parking areas." Compl. ¶ 55.  The shelter also maintains a "no guns" sign on its door, which is visible from the parking lot.  Compl. ¶ 56.  Program B has not officially altered its policies, but WVCADV states that the program now applies them "to the interior of the facilities and not to the parking areas" due to the amendments' enactment.  Compl. ¶ 57. The plaintiff alleges that the amendments have exacerbated potential security risks because staff members feel unable to investigate situations where suspicious visitors or employees may have firearms in their vehicles.  Compl. ¶¶ 58, 60.

Similarly, the WVCADV states that Program C maintains resident and employee policies forbidding weapons on its premises.  Compl. ¶ 63.  Program C also maintains signs on its property indicating that firearms and other weapons are prohibited.  Compl. ¶ 63.  In the past, the program would deny residents permission to keep firearms in vehicles, and it would also direct residents to remove weapons from the property if it

learned that they were storing them in their cars.  Compl. ¶ 64.
An employee's possession of a firearm on the program's premises
is also cause for discipline under the employee policy.  Compl.
¶ 63.  The WVCADV insinuates that these policies remain in
effect, claiming that "[t]he program has not had to enforce this
policy since the Parking Lot Amendments were passed [] and is
now uncertain of its rights and what it can and cannot do."
Compl. ¶ 65.  The plaintiff also alleges that "[t]he executive
director of Program C wants to be able to continue to tell
residents and other visitors to remove any firearms from the
parking lot."  Compl. ¶ 65.

As a result of the Parking Lot Amendments, the WVCADV
members claim to face increased dangers "by forcing the members
to permit guns to be brought into the parking area, and by
curtailing the discretion of shelter staff to ask about, look
for, or respond to the presence of a firearm inside a vehicle."
Compl. ¶ 67.  Additionally, the complaint alleges that members
may have to transfer a client to another shelter if a security
concern arises due to the inability to control firearms on the
property.  Compl. ¶ 69.

The complaint also claims that the members of the
WVCADV are harmed by being forced "to adopt policies that are
inconsistent with their fundamental mission to provide sanctuary

for abuse victims and to combat institutional violence." Compl.
¶ 72.  The complaint includes specific allegations concerning
the mission statements of Programs A and C.  According to the
plaintiff, Program A states that its mission is "[t]he
elimination of personal, institutional, and cultural violence
against women, children, and men . . . . By developing strong
community support and a professional program, [Program A]
provides safety and quality emergency intervention, advocacy,
prevention, and educational services for victims and witnesses
of domestic and/or sexual violence."  Compl. ¶ 44.  Program C's
mission is to "to protect victims, prevent violence and empower
survivors of domestic violence, sexual assault, stalking, and
human trafficking."  Compl. ¶ 62.

     The WVCADV filed its complaint in this court on June
6, 2019, against Patrick Morrisey, in his official capacity as
Attorney General for the State of West Virginia.  The WVCADV
asserts four violations of 42 U.S.C. § 1983: (1) free speech
under the First Amendment to the U.S. Constitution; (2) freedom
of association under the First Amendment of the U.S.
Constitution; (3) substantive due process under the Fourteenth
Amendment of the U.S. Constitution; and (4) procedural due
process under the Fourteenth Amendment of the U.S. Constitution.
The WVCADV requests declaratory judgment, injunctive relief, and
attorney's fees.  The defendant filed a motion to dismiss on

August 5, 2019.

## II.  <u>Motion to Dismiss Standard</u>

Neither party has briefed the standard of review applicable to the pending motion to dismiss.  However, the Attorney General offers standing and ripeness challenges to subject matter jurisdiction, and such motions are governed by Federal Rule of Civil Procedure 12(b)(1).  <u>See</u>, <u>e.g.</u>, <u>L-3 Commc'ns Corp. v. Serco, Inc.</u>, 673 F. App'x 284, 288-90 (4th Cir. 2016).

"A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually."  <u>Beck v. McDonald</u>, 848 F.3d 262, 270 (4th Cir. 2017) (citing <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, the defendant contends 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'"  <u>Id.</u> (quoting <u>Kerns</u>, 585 F.3d at 192).  "Accordingly, the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration,' wherein 'the facts alleged in the complaint are taken as true,' and the defendant's challenge 'must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'"  <u>Id.</u> (quoting <u>Kerns</u>, 585 F.3d at 192).  "In a factual challenge, the defendant argues 'that the jurisdictional allegations of the

8

complaint [are] not true,' providing the trial court the
discretion to 'go beyond the allegations of the complaint and in
an evidentiary hearing determine if there are facts to support
the jurisdictional allegations.'" Id. (quoting Kerns, 585 F.3d
at 192) (alteration in original).  When a defendant makes a
factual challenge, "the presumption of truthfulness normally
accorded a complaint's allegations does not apply." Id.
(quoting Kerns, 585 F.3d at 192) (internal quotation marks
omitted).

   Nevertheless, the "procedural posture of the case
dictates the plaintiff's burden as to standing." Beck, 848 F.3d
at 270 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561
(1992).  "[E]ach element [of standing] must be supported in the
same way as any other matter on which the plaintiff bears the
burden of proof, i.e., with the manner and degree of evidence
required at the successive stages of the litigation." Lujan,
504 U.S. at 561 (citations omitted).  "At the pleading stage,
general factual allegations of injury resulting from the
defendant's conduct may suffice, for on a motion to dismiss we
'presum[e] that general allegations embrace those specific facts
that are necessary to support the claim.'" Id. (quoting Lujan
v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)).  Courts
therefore accept as true standing-related allegations "for which
there is sufficient 'factual matter' to render them 'plausible

on [their] face.'"  <u>Beck</u>, 848 F.3d at 270 (quoting <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 678 (2009)).  This presumption is not
applied to "conclusory statements" and "legal conclusions"
alleged in a complaint.  <u>Id.</u> (citing <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 555-56 (2007); <u>Ashcroft</u>, 556 U.S. at 678).

        The defendant's failure to explicitly set out and
apply a particular Rule 12(b)(1) standard to his motion
complicates an analysis concerning the proper standard of review
in this case.  On the one hand, the Attorney General recognizes
that the court "'may look beyond the complaint' to 'determine if
there are facts to support the jurisdictional allegations'" and
quotes a case discussing such a procedure for analyzing <u>factual</u>
Rule 12(b)(1) challenges for this proposition.  Def.'s Mem. Law
Supp. Mot. Dismiss 9, ECF No. 13 ("Def.'s Mem.") (quoting
<u>Wikimedia Found. v. Nat'l Sec. Agency</u>, 857 F.3d 193, 208 (4th
Cir. 2017)).  The Attorney General proceeds to make certain
points relying on facts external to the complaint, particularly
those regarding the lack of enforcement actions under the
Parking Lot Amendments, to argue that dismissal is appropriate.
<u>E.g.</u>, Def.'s Mem. 13.  This may indicate that the Attorney
General intends to mount a factual challenge to subject matter
jurisdiction.

On the other hand, the defendant makes several arguments that ostensibly pertain to the facts pleaded on the face of the complaint, such as the standing argument concerning whether WVCADV's mission is germane to its First Amendment claim and the ripeness argument concerning the insignificance of $5,000.00 civil penalties.  Def.'s Mem. 20-24.  And tellingly, the Attorney General does not request a Rule 12(b)(1) evidentiary hearing or offer actual evidence in support of its arguments about a lack of enforcement actions despite his citations to caselaw describing factual Rule 12(b)(1) challenges.  These points, coupled with <u>Lujan</u> and <u>Beck's</u> discussions of the standard applicable to standing-related motions to dismiss, counsel acceptance of the facts pled as true for the purposes of the present analyses.  Accordingly, the court will afford the allegations of the complaint a presumption of truthfulness.

### III. <u>Discussion</u>

#### A. <u>Standing</u>

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit." <u>Friends of the Earth, Inc. v. Laidlaw</u>
<u>Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000) (citing <u>Hunt</u>
<u>v. Wash. State Apple Advert. Comm'n</u>, 432 U.S. 333, 343 (1977)).
To have standing to sue in his or her own right, "[t]he
plaintiff must have (1) suffered an injury in fact, (2) that is
fairly traceable to the challenged conduct of the defendant, and
(3) that is likely to be redressed by a favorable judicial
decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016)
(citations omitted).  And relatedly, "plaintiff-organizations
[must] make specific allegations establishing that at least one
identified member ha[s] suffered or would suffer harm." <u>Summers</u>
<u>v. Earth Island Inst.</u>, 555 U.S. 488, 498 (2009); <u>see</u> <u>also</u> <u>Lujan</u>,
504 U.S. at 556 ("Assuming [the plaintiffs] established that
funded activities abroad threaten certain species, they failed
to show that one or more of their members would thereby be
directly affected apart from the members' special interest in
the subject.").

        The defendant argues that the WVCADV lacks standing to
bring this lawsuit for two independent reasons.  Def.'s Mem. 6.
First, the defendant claims that the first prong for
associational standing is not satisfied because WVCADV's members
lack standing to sue in their own right for failing to allege a
sufficient injury in fact.  Def.'s Mem. 6-7.  Second, the
defendant claims that the second prong for associational

standing is not satisfied because WVCADV's challenge to the
Inquiry Provisions is not germane to its purpose "to end
personal and institutional violence," so the court should
dismiss the WVCADV's free speech claim.  Def.'s Mem. 14.

Turning to the first argument, the defendant asserts
that the WVCADV cannot allege a sufficient injury in fact to
have standing because the WVCADV is "not facing enforcement
actions, nor is there a credible threat of future enforcement."
Def.'s Mem. 6-7.  For WVCADV members alleging that its conduct
could violate section 61-7-14(d) for retaining policies
prohibiting firearms in parking lots and permitting inquiries
regarding firearms in parking lots, the defendant argues this is
not a sufficient injury because the statute has never been
enforced against any business and the Attorney General does not
plan to enforce the statute absent citizen complaints, which
have not been received against any entity statewide.[1]  Def.'s
Mem. 8-10.  Further, for WVCADV members alleging self-censorship
for changing their policies regarding firearms in parking lots
to comply with section 61-7-14(d), the defendant argues that the
alleged chilling effects do not constitute an injury because the
self-censorship is unreasonable when there is a total lack of

---

[1]     As indicated by the discussion of the appropriate standard
of review, the Attorney General does not substantiate these
claims with any evidence.  For the purposes of the present
analysis, the court evaluates his claims as stated.

enforcement of the statute.  Def.'s Mem. 10-11.

In response to the first argument, the WVCADV asserts that its members have been injured by section 61-7-14(d).  Pl.'s Opp'n 5.  For the coalition members that have not yet changed their policies, the WVCADV argues that these members are injured because "they face a credible fear of enforcement."  Pl.'s Opp'n 5.  The WVCADV claims that courts have often found standing for parties to challenge state statutes on constitutional grounds even when the statute has not yet been enforced because "the very existence of the statute is all that is needed to make the fear reasonable."  Pl.'s Opp'n 6.  For the coalition members that have changed their policies to comply with the statute, the WVCADV argues that these members are injured because "they are being denied the full enjoyment of their constitutional rights, to the detriment of the clients they serve."  Pl.'s Opp'n 5.  The WVCADV claims that individuals do not need to "violate the law and wait to see what happens" before challenging the state statute on constitutional grounds.  Pl.'s Opp'n 13 (citing <u>Mobil Oil Corp. v. Att'y Gen. of Va.</u>, 940 F.2d 73, 76 (4th Cir. 1991)).

To allege an injury in fact, a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief."  <u>Babbitt v. United Farm Workers Nat'l.</u>

Union, 442 U.S. 289, 298 (1979) (citation omitted).  The plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  Id.  Standing exists "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution."  Id.

        "If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation the plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has standing to challenge the statute."  Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d Cir. 2008) (citation omitted).  In Vt. Right to Life Comm., Inc. v. Sorrell, the defendants represented that they had no intention of suing the plaintiff for violating the statute at issue.  221 F.3d 376, 383 (2d Cir. 2000).  The Second Circuit held that the defendants' representation cannot remove the plaintiff's legitimate fear that it will be penalized for its activities because "there is nothing that prevents the [defendants] from changing [their] mind."  Id.  If held otherwise, the court reasoned that it "would be placing [the plaintiff's] asserted First Amendment rights at the sufferance of Vermont's Attorney General."  Id. (citing N.C. Right to Life,

<u>Inc. v. Bartlett</u>, 168 F.3d 705, 711 (4th Cir. 1999), <u>cert.</u>
<u>denied</u>, 528 U.S. 1153 (2000)).

  Courts have held that a plaintiff lacks standing when
a defendant explicitly disavows enforcement because a credible
threat of enforcement does not exist.  <u>See</u>, <u>e.g.</u>, <u>Jamal v. Kane</u>,
96 F.Supp.3d 447, 455-56 (M.D. Pa. 2015) ("[J]ust as a promise
not to enforce the Act eliminates any threat to plaintiffs, the
Attorney General's refusal to do so enhances that threat.");
<u>Loyd's Aviation, Inc. v. Ctr. for Envtl. Health</u>, No. 1:11-cv-
01078, 2011 WL 4971866, at *3-4 (E.D. Cal. 2011) (holding that
plaintiffs failed to establish a genuine threat of imminent
prosecution where defendants repeatedly stated there was no
intent to bring any suit under the statute).  Explicit disavowal
of enforcement of a statute has also been found when the
defendant submits an affidavit stating the statute will not be
enforced against the plaintiff.  <u>See</u>, <u>e.g.</u>, <u>McKay v. Federspiel</u>,
823 F.3d 862, 870 (6th Cir. 2016) (holding plaintiff did not
establish a credible threat of enforcement where the defendant
submitted an affidavit stating the statute would not be enforced
unless directed to do so by a judge); <u>Winsness v. Yocom</u>, 433
F.3d 727, 732 (10th Cir. 2006) (holding the plaintiff could not
show a credible threat of enforcement when the district attorney
submitted an affidavit stating that he does not intend to
enforce the statute until it is either amended or affected by a

new Supreme Court decision).

However, courts have upheld standing and found a credible threat of enforcement where the defendant only states that no one has enforced the statute since its enaction.  See, e.g., Jamal, 96 F.Supp.3d at 455 (holding the plaintiff has standing and rejecting the "Attorney General's position that, because the law has not been enforced by anyone in the four months since its enactment, plaintiffs' constitutional claims are foreclosed and nonadjudicable for lack of a credible threat of imminent harm"); Deida v. City of Milwaukee, 192 F.Supp.2d 899, 908-09 (E.D. Wis. 2002) (finding a credible threat of enforcement where the defendant presently did not intend to enforce the statute and would not affirmatively disavow enforcement because "nothing prevents them from deciding to enforce it tomorrow").

The plaintiff has alleged that specific members, Programs B and C, have existing residential and employee policies that prohibit firearms in vehicles in parking lot areas as well as signs evidencing such policies.  W. Va. Code section 61-7-14(d)(2) ostensibly proscribes the application of these policies by program staff who would otherwise take action to investigate and remove firearms from parking lots.  The defendant claims that the statute will not be enforced against

WVCADV members "without citizen complaints -- which he has not received against any business or entity statewide." Def.'s Mem. 10.  The defendant has not explicitly disavowed enforcement of the Parking Lot Amendments, nor has the defendant submitted an affidavit stating the statutes will not be enforced against the plaintiff.

The defendant's statement is not enough to remove WVCADV members' legitimate fear that they will be penalized for applying their policies and violating section 61-7-14(d) because there is nothing to suggest that the defendant will not enforce the statute if a member shelter adheres to its existing policy and a citizen files a complaint.  Thus, the WVCADV has alleged an injury in fact.  If the court were to rule otherwise, the court would be placing WVCADV member's asserted constitutional rights at the sufferance of West Virginia's Attorney General if any citizen files a complaint.

"An additional cognizable injury under the First Amendment is self-censorship, which occurs when a claimant is 'chilled from exercising her right to free expression.'"  Benham v. City of Charlotte, 635 F.3d 129, 135 (4th Cir. 2011) (quoting Harrell v. Fla. Bar, 608 F.3d 1241, 1254 (11th Cir. 2010)).  "Government action will be sufficiently chilling when it is 'likely [to] deter a person of ordinary firmness from the

exercise of First Amendment rights.'" Id. (quoting Constantine
v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500
(4th Cir. 2005)). "Any chilling effect . . . must be
objectively reasonable." Id. (internal quotations omitted).
"To decide the objective reasonableness of the claimed chilling
effect from the Act, the court evaluates whether there is a
credible threat of enforcement against the plaintiff." People
for the Ethical Treatment of Animals, Inc. v. Stein, 737 F.
App'x 122, 129 (4th Cir. 2018). "A non-moribund statute that
facially restricts expressive activity by the class to which the
plaintiff belongs presents such a credible threat, and a case or
controversy thus exists in the absence of compelling evidence to
the contrary." Id. (quoting N.C. Right to Life, Inc. v.
Bartlett, 168 F.3d 705, 710 (4th Cir. 1999)). To help determine
whether a credible threat exists, courts also examine whether
the government has "disavowed enforcement if [plaintiffs] make
similar statements in the future." Susan B. Anthony v.
Driehaus, 573 U.S. 149, 165 (2014).

        The WVCADV alleges a sufficient First Amendment injury
for members that have changed their policies to comply with
section 61-7-14(d) because their rights have been chilled. The
plaintiff specifically alleges that Program A desires to revert
to its former policy that forbade firearms in its parking lot
and permitted staff to ask prospective residence about the

presence of firearms.  At this stage in the proceedings, there is no reason to assume that the defendant intends to refrain from enforcing the statute if a WVCADV member like Program A returns to a "no-firearms in the parking area" policy, that program enforces the policy, and an aggrieved party files a complaint with the defendant.  Even though the statute has not yet been enforced, the chilling effect in this case is objectively reasonable for members who have changed policies pertaining to the presence of firearms in parking lots after the amendments were enacted.  Thus, the alleged self-censorship of WVCADV members amounts to an actual injury in fact.

Turning to the second argument, the defendant argues that the second prong for associational standing is not met because the WVCADV's free speech claim is not germane to the organization's purpose. Def.'s Mem. 14.  Specifically, the defendant claims that the WVCADV's complaint does not allege how the inability to inquire whether a customer or employee has a firearm in a vehicle advances the WVCADV's purpose to end personal and institutional violence.  Def.'s Mem. 14-15.  The defendant contends that the WVCADV's purpose is to decrease violence, not to promote the free exchange of ideas, so the free speech claim is only tangentially related to the WVCADV's purpose, which is insufficient for associational standing. Def.'s Mem. 15-16.

20

The WVCADV responds that "[p]rotecting the ability of its members to monitor and control the presence of loaded firearms on their property -- whether through 'no guns' policies or by being able to ask about guns -- is not only germane to, but directly advances, the Coalition's mission of providing for the physical safety and psychological well-being of domestic-violence victims." Pl.'s Opp'n. 14.  The WVCADV states that its mission is to "end personal and institutional violence." Pl.'s Opp'n 15.  The WVCADV argues that to achieve its mission, it helps members create "a safe place for victims where they will not be retraumatized by the presence of weapons, including firearms," by inquiring about the presence of guns on the property so that the WVCADV members can call the police or can ask the individual with a firearm to leave, give the firearm to someone else, or place the firearm in a safer location.  Pl.'s Opp'n 15-17.  In addition, the WVCADV claims that the information is important to its members to either protect the victims from firearms or reassure the victims that they are not in the presence of any firearms that could harm them.  Pl.'s Opp'n. 17.

For the second prong of the associational standing test, the "court must determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining

the association and whether the lawsuit bears a reasonable
connection to the association's knowledge and experience."
Bldg. & Constr. Trades Counsel v. Downtown Dev., Inc., 448 F.3d
138, 149 (2d Cir. 2006) (citation omitted).  "[C]ourts have
generally found the germaneness test to be undemanding."
Presidio Golf Club v. Nat'l Park Serv., 155 F.3d 1153, 1159 (9th
Cir. 1998) (citing Humane Soc'y of the U.S. v. Hodel, 840 F.2d
45, 58 (D.C. Cir. 1998)).

       The mission of the WVCADV is to end personal and
institutional violence.  To achieve this mission, the WVCADV
"supports member programs in their provision of services to
victims of domestic violence by strengthening public policy,
coordinating statewide education and training, providing
assistance to member programs, and raising public awareness
about violence against women."  Compl. ¶ 4.  Member programs
generally "hold as part of their core missions the creation of a
safe place for victims where they will not be retraumatized by
the presence of weapons, including firearms."  Compl. ¶ 30.  The
complaint also contains specific allegations regarding the
missions of Programs A and C that clearly relate to the WVCADV's
mission concerning domestic violence.

The WVCADV's given mission includes goals "sought to be vindicated by the litigation in question."  Hodel, 840 F.2d at 59.  Under this undemanding test, this lawsuit challenging the ability to ask whether a firearm is in a domestic violence shelter parking lot area is germane to the stated purpose of the WVCADV to end personal and institutional violence.  If this lawsuit were successful, it would further the interests that individual members sought to vindicate in joining the WVCADV by ensuring that members, such as Programs A and C, can implement the policies they believe are best to end violence and create a safe haven for domestic violence victims.

"At bottom, the prudential considerations of the Hunt test for associational standing do not counsel against permitting [WVCADV] to bring this suit, and [the court] reject[s] the [defendant's] challenge on that ground."  Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 188 (4th Cir. 2007).

B.   **Ripeness**

In arguing that this case is not ripe for adjudication at this time, the defendant cites to <u>Abbot Labs v. Gardner</u>, which states:

> Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance[.]

387 U.S. 136, 153 (1967).  The defendant then argues that the requirements set out in <u>Abbot Labs</u> are not met in this case because (1) there is no credible threat of enforcement that demands an immediate change in the Coalition members' conduct and (2) the penalty of an enforcement action is not serious, as a violation carries a $5,000 penalty.  Def.'s Mem. 18-19.

First, the WVCADV responds that its pre-enforcement claims are ripe for adjudication because its members have concrete plans to engage in a proscribed activity.  Pl.'s Mem. 18-19. (citing <u>R.I. Ass'n of Realtors, Inc. v. Whitehouse</u>, 199 F.3d 26, 33 (1st Cir. 1999) ("To establish ripeness in a pre-enforcement context, a party must have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity")).  The WVCADV claims that the issues are fit for a judicial decision as members must currently choose between non-

24

compliance and self-censorship.  Pl.'s Mem. 19.  In addition,
the WVCADV contends that its members would sustain a substantial
hardship if the court withheld consideration because "lost
opportunities for expression cannot be retrieved."  Pl.'s Mem.
19 (quoting R.I. Ass'n of Realtors, 199 F.3d at 34).  Second,
the WVCADV responds that a civil penalty of $5,000 per violation
plus attorney's fees and costs of litigation is sufficient to
chill the exercise of First Amendment rights.  Pl.'s Mem. 19
n.3.

        "In evaluating the ripeness of claims for judicial
review, courts must balance 'the fitness of the issues for
judicial decision and the hardship to the parties of withholding
court consideration.'"  Franks v. Ross, 313 F.3d 184, 194-95
(4th Cir. 2002) (quoting Ohio Forestry Ass'n, Inc. v. Sierra
Club, 523 U.S. 726, 733 (1998)).  "A case is fit for judicial
decision when the issues are purely legal and when the action in
controversy is final and not dependent on future uncertainties."
Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (citation
omitted).  "The hardship prong is measured by the immediacy of
the threat and the burden imposed on the plaintiffs who would be
compelled to act under threat of enforcement of the challenged
law."  Id.  "Much like standing, ripeness requirements are also
relaxed in First Amendment cases."  Cooksey v. Futrell, 721 F.3d
226, 240 (4th Cir. 2013) (citation omitted).

The issues in this case are fit for judicial decision. The primary issue is whether West Virginia Code section 61-7-14 violates the WVCADV members' constitutional rights, which presents a legal question.  The Parking Lot Amendments are fixed and final.

The WVCADV would also suffer hardship if the court withholds consideration of this issue.  WVCADV needed to show a credible threat of prosecution, which it has "done here by challenging a statute that facially restricts their expressive activity."  South Carolina Citizens for Life, Inc. v. Krawcheck, 301 F. App'x 218, 222 (4th Cir. 2008).  WVCADV members who violate the statute may face a penalty of $5,000 per violation as well as substantial attorney's fees and costs, which could aggregate to a serious amount.  See, e.g., Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000) ("VRLC is at risk of a civil penalty of up to $10,000 for each infraction of the Vermont election law.  That penalty's deterrence of VRLC's speech is palpable enough.").  Given the palpable threat of prosecution, Programs A, B, and C have already allegedly been forced to either change their policies regarding firearms in parking lot areas or refuse to enforce existing policies.  And the plaintiff has alleged that they desire to return to their prior practices.  This satisfies the hardship prong, and the court accordingly finds the matter ripe

for consideration.

### IV. <u>More Definite Statement</u>

On September 26, 2019, the court entered a stipulated order withdrawing defendant's request for a more definite statement.  Thus, the court no longer needs to discuss this issue.

### V. <u>Conclusion</u>

For the foregoing reasons, it is ORDERED that defendant Patrick J. Morrisey's motion (ECF No. 12) to dismiss be, and it hereby is, DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER:  November 25, 2020

_____
John T. Copenhaver, Jr.
Senior United States District Judge