IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |
| THE WEST VIRGINIA COALITION ) | |
| AGAINST DOMESTIC VIOLENCE, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 2:19-cv-00434 |
| ) | |
| PATRICK J. MORRISEY, in his official ) | |
| capacity as Attorney General for the ) | |
| State of West Virginia, ) | |
| Defendant. ) | |
| ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

DECLARATION OF █████████
DIRECTOR OF PROGRAM D

1.     I am the Director of the ███████████████████████, which is designated as "Program D" in this lawsuit.  Program D is a member program in the West Virginia Coalition Against Domestic Violence (WVCADV).  I have been the Director of Program D since 2017, and have more than seven years of experience in the field of domestic violence services.  I make this declaration based on my own personal knowledge, from my work for Program D.  If called as a witness I could competently testify to the matters set forth in this declaration.

2.     Program D operates a 16-bed shelter in a converted house, as well as administrative offices (called the "activity center") in a neighboring building, a visitation and exchange center at a separate location, and three outreach offices in counties that we serve.  We have a parking lot with about seven spaces located behind the shelter, as well as a separate parking area located next to the activity center.  Our visitation and exchange center also has a parking lot that it shares with an elementary school, though the hours of operation for the visitation and exchange program mean that there is basically no overlap with school personnel using the lot.

1

3.      Program D offers a 24/7 emergency shelter, crisis hotline, and emergency intervention for victims of domestic violence.  We also offer case management, court advocacy, housing advocacy, counseling, support groups, safety planning, programs for children, teen dating safety and batterers intervention/prevention, and emergency intervention for victims of domestic violence.

4.      Program D's mission is to eliminate domestic violence through leadership, education, empowerment, and community collaboration. We are dedicated to using trauma-informed speech and guidance to identify short- and long-term goals for clients, and support clients in fulfilling them.

5.      For Program D's clients, just the presence of a firearm is a threat.  We regularly serve clients who have been shot.  For example, we recently served three clients who came to the shelter directly from the hospital after having been treated for gunshot wounds.  One of these women is now permanently disabled.  Others have been victimized without being shot:  around 30% of our shelter clients have been threatened with a gun.  One recent shelter client was a woman who fled with her son from an abuser who held a gun to the child's head as a way to terrorize and control his victim.  I recently accompanied a different client to court as an advocate; she was staying at our shelter because her husband held a handgun to her head and to her daughter's head. As he passed by the waiting room at the courthouse, he made a gun-to-the-head motion while looking at his wife, knowing that this gesture alone was enough to terrorize her, given what he had already put her through.

6.      A critical aspect of Program D's work is making clients who have been traumatized this way these feel safe both physically and emotionally.  One way we do this is by prohibiting firearms on all of Program D's property.  Our policies state that no weapons are permitted on

Program D Decl.

Program D's premises, and this means anywhere on Program D's property including in its parking lots.  Clients are informed of this policy and given a written copy at intake.  Signs reading "No Weapons" are hanging in the activity center and in the main hallway of the shelter.

7.       Our "no weapons" policy is important to protecting the safety of shelter residents and staff.  Survivors of domestic violence often keep weapons for protection—most often knives or pepper spray, but sometimes a gun.  In Program D's experience, these weapons are dangerous in the communal living situation of a domestic violence shelter, where arguments can escalate. The knives in our shelter's kitchen are now secured with a lock, for this reason.  So are knives and pepper spray that belong to residents; these must be turned over and locked up in a staff office, and are returned only when residents leave the shelter.  A gun would pose an even greater danger, particularly if accessed by someone unfamiliar with how to handle them, or by someone suffering from post-traumatic stress disorder as many of our clients do.

8.       Another serious risk to having firearms on our property is the danger that they could be found by a child staying at our shelter; we require that all medications be kept under lock and key for this reason.  If Program D staff learns that a client or guest has a firearm in their car, we would want them to enforce the no-weapons policy and have that person remove the weapon from our property, or park off-site.  But with the change in the law, we are now unsure whether staff can ask about a gun the way they can if they suspect a knife or some other kind of contraband in someone's car, and whether we can ask the person to move the weapon off of Program D property for the safety of our residents and staff.

9.       Program D's staff are also prohibited from having a firearm on any Program D property, and can be disciplined or discharged for violating the policy.  This policy is found in our employee handbook, and employees are trained on this as part of new hire orientation.

Program D Decl.

10.    Program D's "no weapons" policies exist not only to ensure the physical safety of clients, but to ensure their emotional safety as well.  To provide effective counseling and other services to clients, we have to be able to build a rapport with clients where they feel safe.  This is a key aspect of trauma-informed care for victims and survivors of violence, which is at the heart of Program D's mission.  We work to provide a physically and mentally safe and welcoming space for survivors of trauma, and this means ensuring that they will not be re-traumatized by encountering a firearm or other weapon.  Forcing Program D to allow firearms on any part of its property makes it difficult to provide the safe environment that our clients need, and makes it harder to provide them effective services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __March 8__, 2021.



Director, Program D

4

Program D Decl.