IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| THE WEST VIRGINIA COALITION AGAINST DOMESTIC VIOLENCE, INC., Plaintiff, | |
| v. | Civil Action No: 2:19-cv-00434 |
| PATRICK J. MORRISEY, in his official capacity as Attorney General for the State of West Virginia, Defendant. | |

## DECLARATION OF TIMOTHY D. BRADLEY

1. I am a retired Lieutenant Colonel Deputy Superintendent of the West Virginia State Police. I spent 25 years working for the state police, starting as a field trooper in 1992, and later becoming an Investigator, Detachment Commander, District Commander, Deputy Chief and Chief of Field Services, and ultimately Deputy Superintendent. I also spent ten years on the Special Response Team (SRT), which is the state police's specialized unit for high-risk arrests, barricaded suspects, and other situations that call for specialized equipment and training. In my career with the state police, I responded to several hundred cases involving firearms, ranging from disputes over a property line up to and including murder cases. I have also responded to several hundred domestic violence cases as well, many of which involved firearms. I attest to the following matters from personal knowledge and based on my 25 years in law enforcement. If called as a witness, I could competently testify to the matters set forth herein.

2. In my experience, the presence of a firearm accessible to those who are not trained law enforcement officers typically increases the chance that a conflict will turn into a lethal

1

encounter. When private citizens are having a dispute, and one or more of them have the ability to retrieve a firearm, the likelihood of lethal violence between them goes way up. I have worked several cases where a minor scuffle like a fight in a bar, or a shoving match outside, has turned into a shooting when one person retrieved a gun from their car and opened fire. The fact that one party in these cases has ready access to a gun can mean the difference between a minor altercation and a fatal or near-fatal shooting.

3. The risk of serious injury or death due to the presence of a firearm is not limited to the parties and bystanders. For responding police officers, the odds of something bad happening go way up if someone other than law enforcement officers at the scene has a gun. Adding a gun to a volatile or hostile situation not only provides a means of lethal violence, it also elevates the level of hostility and aggression of the armed party, making them less predictable and more dangerous. This is especially true in the domestic violence context, which are among the most dangerous calls for responding officers, parties involved, and even bystanders.

4. Domestic violence calls are particularly dangerous because the emotions and intimate involvement of the parties make them behave unpredictably and at times aggressively. When someone in this state of mind has access to a firearm, they are an extreme danger to themselves and others. This is something the state police tells its officers during training, because of the risk that the parties in a domestic violence incident pose to officer safety. More officers are shot, or shot at, responding to domestic violence calls than any other type of call. My own personal experience in responding to domestic violence calls bears out this risk. Over the course of my career both on and off the SRT, I responded to numerous domestic violence calls where a wife, a neighbor, or responding officers were shot or shot at. While I am thankful to never have had to use lethal force personally in a domestic violence response, I have responded to domestic violence

scenes where a spouse or intimate partner has been killed or taken hostage by an armed perpetrator. One such incident was a triple homicide where a husband shot and killed his wife and stepdaughter, along with a neighbor's wife who was trying to help them.

5. In some instances, the danger is from the perpetrator of the domestic violence: I have responded to calls where a suspect fled to retrieve a weapon, and it was this access to a firearm that turned a volatile situation into an explosive one. In other cases I have worked, it is the unpredictable behavior of abuse *victims* that poses the primary danger to officers. In one call I remember working, the state police disarmed and arrested the victim's husband, but this arrest prompted the victim to turn around and physically attack responding officers. If the victim had been able to retrieve a gun, the chance of someone being injured or killed by gunfire would have been much greater.

6. Domestic violence programs that house and serve victims of scenarios like these face an increased risk of serious and potentially lethal violence if they permit these persons to have ready access to a firearm while on shelter property. This risk is compounded for those victims and survivors who also struggle with substance abuse and mental health issues, as in my experience as a police officer and first responder, these factors further increase the risk that someone will behave unpredictably, impulsively, and/or aggressively in response to stressful situations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 2021.

Timothy D. Bradley

3