**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

THE WEST VIRGINIA COALITION
AGAINST DOMESTIC VIOLENCE, INC.,

   *Plaintiff,*

  v.           Case No. 2:19-cv-00434
               (Judge John T. Copenhaver, Jr.)

PATRICK J. MORRISEY, in his official
capacity as Attorney General for the
State of West Virginia,

   *Defendant.*


**COMBINED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
COSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

SUMMARY OF ARGUMENT ................................................................................................4

ARGUMENT ...........................................................................................................................4

   I.    The Act Does Not Violate Substantive Due Process ........................................................4

      A.  The Coalition Does Not Have A Fundamental Right To Exclude Firearms From Its Parking Lots.........................................................................................................................5

      B.  The Act Satisfies Rational Basis Review ...................................................................8

   II.   The Act Does Not Violate The Coalition's Members' Free Association Rights ...............9

   III.  The Act Is Not Unconstitutionally Vague ......................................................................12

   IV.  The Act Does Not Violate Free Speech ..........................................................................15

      A.  The Inquiry Provision Constitutionally Regulates Commercial Speech .........................15

      B.  The No Action Provision Regulates Conduct, Not Speech .............................................20

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*,
  191 F.3d 429 (4th Cir. 1999) ................................................................. 16

*Aptive Envt'l, LLC v. Town of Castle Rock*,
  959 F.3d 961 (10th Cir. 2020) ............................................................... 17

*Barr v. Am. Ass'n of Pol. Consultants*,
  140 S. Ct. 2335 (2020) ......................................................................... 17

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989) ............................................................................. 19

*Benham v. City of Charlotte, N.C.*,
  635 F.3d 129 (4th Cir. 2011) ............................................................... 15

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ...................................................................... 10, 12

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
  459 U.S. 87 (1982) ............................................................................... 12

*Cahaly v. Larosa*,
  796 F.3d 399 (4th Cir. 2015) ............................................................... 15

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ......................................................................... 4, 16

*Cruzan v. Director, Mo. Dep't of Health*,
  497 U.S. 261 (1990) ............................................................................... 6

*Davis v. Mich. Dep't of Treasury*,
  489 U.S. 803 (1989) ............................................................................. 13

*DeKalb Stone, Inc. v. Cnty. of DeKalb, Georgia*,
  106 F.3d 956 (11th Cir. 1997) ............................................................... 7

*Doe v. Claiborne Cnty. Tenn.*,
  103 F.3d 495 (6th Cir. 1996) ................................................................. 6

*Doe v. Taylor Indep. Sch. Dist.*,
  15 F.3d 443 (5th Cir. 1994) ................................................................... 6

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Educ. Media Co. at Va. Tech, Inc. v. Insley,*
   731 F.3d 291 (4th Cir. 2013) ........................................................................... 18

*Fargo Women's Health Org., Inc. v. Larson,*
   381 N.W.2d 176 (N.D. 1986) .......................................................................... 19

*Fargo Women's Health Org., Inc. v. Larson,*
   476 U.S. 1108 (1986) ...................................................................................... 19

*FCC v. Fox Television Stations,*
   567 U.S. 239 (2012) ........................................................................................ 13

*Fla. Bar v. Went For It, Inc.,*
   515 U.S. 618 (1995) ........................................................................................ 18

*Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.,*
   576 F. Supp. 2d 1281 (N.D. Fla. 2008) ............................................. 1, 3, 4, 9, 15

*Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.,*
   576 F. Supp. 2d 1301 (N.D. Fla. 2008) .............................................................. 1

*GeorgiaCarry.Org, Inc. v. Georgia,*
   687 F.3d 1244 (11th Cir. 2012) ......................................................................... 7

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.,*
   721 F.3d 264 (4th Cir. 2013) ...................................................................... 16, 19

*Greater Phila. Chamber of Com. v. City of Phila.,*
   949 F.3d 116 (3d Cir. 2020) ................................................................. 17, 18, 19

*Healy v. James,*
   408 U.S. 169 (1972) ........................................................................................ 12

*Hill v. Colorado,*
   530 U.S. 703 (2000) ........................................................................................ 14

*Hohn v. United States,*
   524 U.S. 236 (1998) ........................................................................................ 17

*Imaginary Images, Inc. v. Evans,*
   612 F.3d 736 (4th Cir. 2010) ........................................................................... 14

*Ingraham v. Wright,*
   430 U.S. 651 (1977) .......................................................................................... 6

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Int'l Outdoor Inc. v. City of Troy, Mich.*,
  974 F.3d 690 (6th Cir. 2020) .......................................................................... 17

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ........................................................................... 6

*Kennedy v. Ridgefield*,
  439 F.3d 1055 (9th Cir. 2006) ........................................................................... 6

*Lambert v. Hartman*,
  517 F.3d 433 (6th Cir. 2008) ......................................................................... 5, 6

*Lingle v. Chevron U.S.A., Inc.*,
  544 U.S. 528 (2005) ........................................................................................... 8

*Lone Star Security & Video, Inc. v. City of L.A.*,
  827 F.3d 1192 (9th Cir. 2016) ......................................................................... 17

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982) ........................................................................................... 5

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ......................................................................................... 19

*Palazzolo v. Rhode Island*,
  533 U.S. 606 (2001) ........................................................................................... 5

*Parker v. Levy*,
  417 U.S. 733 (1974) ......................................................................................... 15

*PruneYard Shopping Ctr. v. Robins*,
  447 U.S. 74 (1980) .............................................................................. 5, 8, 9, 11

*Prynne v. Settle*,
  2021 WL 717054 (4th Cir. 2021) ....................................................................... 8

*Ramsey Winch Inc., v. Henry*,
  555 F.3d 1199 (10th Cir. 2009) .............................................................. 1, 8, 9, 14

*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985) ........................................................................................... 5

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ...................................................................................... 9, 10

iv

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Rumsfeld v. Forum for Acad. and Institutional Rts. ("FAIR"),*
547 U.S. 47 (2006),  ........................................................................... 4, 9, 10, 12, 20

*Sorrell v. IMS Health Inc.,*
564 U.S. 552 (2011) ........................................................................................... 16

*Stoneking v. Bradford Area Sch. Dist.,*
882 F.2d 720 (3d Cir. 1989) ................................................................................. 6

*Stover v. Fingerhut Direct Mktg., Inc.,*
709 F. Supp. 2d 473 (S.D. W. Va. 2012) ...................................................... 12, 13

*United States v. Class,*
930 F.3d 460 (D.C. Cir. 2019) ............................................................................ 19

*United States v. Edwards,*
783 F. App'x. 540 (6th Cir. 2019)........................................................................ 14

*United States v. Miselis,*
972 F.3d 518 (4th Cir. 2020)......................................................................... 13, 14

*United States v. Stevens,*
130 S. Ct. 1577 (2010) ........................................................................................ 16

*United States v. Williams,*
553 U.S. 285 (2008) ............................................................................................ 13

*Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc.,*
455 U.S. 489 (1982) ............................................................................................ 13

*Vugo, Inc. v. N.Y.C,*
931 F.3d 42 (2d Cir. 2019) ................................................................................. 17

*Washington v. Glucksberg,*
521 U.S. 702 (1997) .............................................................................................. 4

*White v. Napoleon,*
897 F.2d 103 (3d Cir. 1990) ................................................................................. 6

*Winston v. Lee,*
470 U.S. 753 (1985) .............................................................................................. 6

*Wollschlaeger v. Governor, Fla.,*
848 F.3d 1293 (11th Cir. 2017)...................................................................... 17, 18

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

**Constitutional Provision**

U.S. Const. amend. I ................................................................................................. 8

**Statutes**

Ala. Code § 13a-11-90 (2017) .................................................................................... 1

Alaska Stat. § 18.65.800 (2017) ................................................................................ 1

Ariz. Rev. Stat. Ann. § 12-781 (2017) ...................................................................... 1

Fla. Stat. § 790.251 (2017) .................................................................................... 1, 3

Ga. Code Ann. § 16-11-135 (2017) ........................................................................... 1

Idaho Code § 5-341 (2017) ........................................................................................ 1

Ill. Comp. Stat. § 66/65 (2017) ................................................................................. 1

Ind. Code Ann. § 34-28-7-2 (2017) ........................................................................... 1

Kan. Stat. Ann. § 75-7c10 (2017) ............................................................................. 1

Ky. Rev. Stat. Ann. § 237.106 (West 2017) .............................................................. 1

La. Rev. Stat. § 32:292.1 (2017) ............................................................................... 1

Me. Stat. Tit. 26, § 600 (2017) .................................................................................. 1

Minn. Stat. § 624.714(18) (2017) .............................................................................. 1

Miss. Code Ann. § 45-9-55 (2017) ............................................................................ 1

N.D. Cent. Code § 62.1-02-13 (2017) ....................................................................... 1

Neb. Rev. Stat. § 69-2441 (2017) .............................................................................. 1

Okla. Stat. Tit. 21, §§ 1289.7a, 1290.22 (2017) ....................................................... 1

Tenn. Code Ann. §§ 39-17-1313, 50-1-312 .............................................................. 1

Tex. Labor Code Ann. § 52.061 (West 2017) ............................................................ 1

Utah Code Ann. § 4-45-103 (2017) ........................................................................... 1

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

W. Va. Code § 2-2-10(cc) ........................................................................................... 20

W. Va. Code § 61-7-14 .................................................................. 1, 2, 3, 12, 13, 14, 15, 16

Wis. Stat. § 175.60(15m) (2017) .................................................................................. 1

**Other Authority**

Malerie Leigh Bulot, Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws,* 78 La. L. Rev. 989 (2018) ........................................................................................... 1

## INTRODUCTION

In 2018, the West Virginia Legislature passed the Business Liability Protection Act (the "Act"). W. Va. Code § 61-7-14. It joined 21 of its sister States[1] in having laws preserving the right of gun owners to store lawfully owned firearms in vehicles in parking lots while at work and visiting certain businesses—termed "Parking Lot [L]aws." Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws,* 78 La. L. Rev. 989, 991 n.12 (2018). Parking Lot Laws like the Act are exacting, but not limitless. They reflect the difficult task of state legislatures to carefully craft laws for the common good even if those laws are unpopular.

"Employers [have] challenged [parking lot] statutes in courts across the nation on constitutional grounds. . . . Despite the employers' best arguments, courts [have] largely upheld" these laws. Bulot, 78 La. L. Rev. at 999. This is because, as the Tenth Circuit and Northern District of Florida found, these statutes do not unconstitutionally burden the rights of property owners. *See Ramsey Winch Inc., v. Henry*, 555 F.3d 1199, 1210-11 (10th Cir. 2009); *Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1281, 1293 (N.D. Fla. 2008).[2] Plaintiff fails at every turn to prove that their claims require a different result.

---

[1] *See, e.g.*, Ala. Code § 13a-11-90 (2017); Alaska Stat. § 18.65.800 (2017); Ariz. Rev. Stat. Ann. § 12-781 (2017); Fla. Stat. § 790.251 (2017); Ga. Code Ann. § 16-11-135 (2017); Idaho Code § 5-341 (2017); 430 Ill. Comp. Stat. § 66/65 (2017); Ind. Code Ann. § 34-28-7-2 (2017); Kan. Stat. Ann. § 75-7c10 (2017); Ky. Rev. Stat. Ann. § 237.106 (West 2017); La. Rev. Stat. § 32:292.1 (2017); Me. Stat. Tit. 26, § 600 (2017); Minn. Stat. § 624.714(18) (2017); Miss. Code Ann. § 45-9-55 (2017); Neb. Rev. Stat. § 69-2441 (2017); N.D. Cent. Code § 62.1-02-13 (2017); Okla. Stat. Tit. 21, §§ 1289.7a, 1290.22 (2017); Tenn. Code Ann. §§ 39-17-1313, 50-1-312; Tex. Labor Code Ann. § 52.061 (West 2017); Utah Code Ann. § 4-45-103 (2017); Wis. Stat. § 175.60(15m) (2017).

[2] The court preliminarily struck down part of the Florida statute as it applied to customers based on a quirk in the law that only made it applicable to customers of businesses that employed at least one individual with a concealed-carry permit. *See Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1281, 1291-93 (N.D. Fla. 2008). The parties agreed to final judgment being issued consistent with the preliminary injunction. *See* 576 F. Supp. 2d 1301, 1303 (N.D. Fla. 2008).

## STATEMENT OF FACTS

The Act bars any employer or business from "prohibit[ing] any customer, employee, or invitee from possessing any legally owned firearm" so long as the firearm is "[l]awfully possessed," is "[o]ut of view," is "[l]ocked inside or locked to a motor vehicle in a parking lot," and "the customer, employee, or invitee" is not trespassing.   W. Va. Code § 61-7-14(d)(1). Employers and businesses are also barred from conditioning entry into a parking lot on an agreement not to have a firearm in the vehicle.  *Id.* § 61-7-14(d)(4).  An employer likewise may not "condition employment" on an employee holding (or not holding) a concealed handgun license.  *Id.* §§ 61-7-14(d)(3)(A)-(B).

To protect privacy interests and prevent discrimination, employers and businesses may not inquire—either orally or in writing—about "the presence or absence of a firearm locked inside or locked to a motor vehicle in a parking lot."   W. Va. Code  § 61-7-14(d)(2)(A) ("Inquiry Provision").  Nor can they search vehicles in their parking lots for lawfully possessed firearms.  *Id.* § 61-7-14(d)(2)(B).  If an employer or business learns that someone has a lawfully possessed firearm in a vehicle in the parking lot, the employer or business may not "[t]ake any action" based on that information ("No Action Provision").  *Id.* § 61-7-14(d)(2)(C).

The Act, however, is not unlimited.  Property owners and lessees may still prevent the open or concealed carrying of firearms on their property.  W. Va. Code § 61-7-14(b).  And businesses "located at the primary residence of the property owner" fall outside the scope of the Act.  *Id.* § 61-7-14(a)(1).  Finally, businesses can still take action against those unlawfully possessing or using, or threatening to use firearms, on their property.

This statutory scheme closely mirrors Florida Statute § 790.251—passed about 11 years ago—and still intact after facing a similar constitutional challenge as here. *See Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1281, 1293 (N.D. Fla. 2008).

West Virginia's Attorney General Patrick J. Morrisey ("Attorney General") is authorized to enforce violations of the Act. To date, this has been easy. The Attorney General has received no complaints and thus has taken no enforcement action. Yet, on June 6, 2019, Plaintiff, the West Virginia Coalition Against Domestic Violence, Inc. (the "Coalition") on behalf of its members ("Coalition Members"), filed this action against the Attorney General asking this Court to declare Section 61-7-14(d) unconstitutional and enjoin its enforcement. ECF No. 1. The Complaint alleges four violations under 42 U.S.C. § 1983: (1) free speech under the First Amendment of the U.S. Constitution; (2) freedom of association under the First Amendment; (3) substantive due process under the Fourteenth Amendment; and (4) vagueness. *Id.*

On August 5, 2019, the Attorney General moved to dismiss this action for lack of standing and ripeness. ECF No. 12. This Court denied the motion on November 25, 2020, finding that the Coalition had associational standing and that the legal questions presented were ripe as the provisions of the Act are "fixed and final." ECF No. 28 at 18-20, 26. The Attorney General then filed his Answer. ECF No. 32.

The Parties agreed that discovery was not needed and entered into a Joint Stipulation of Facts about the Coalition, its mission, its activities, and domestic violence in general. *See* ECF No. 34. On March 1, 2021, the Coalition moved for summary judgment. ECF No. 38. The Attorney General now cross-moves for summary judgment and responds to the Coalition's motion.

## SUMMARY OF ARGUMENT

**1.** The Act does not violate the Coalition's constitutional rights. The Coalition does not have a fundamental right to exclude guns from its properties. Its due process claim thus triggers the lowest level of review—rational basis. Under it, the West Virginia Legislature was fully within its bounds to balance the public interests with the property rights of the Coalition through the Act.

**2.** As explained by the Supreme Court in *Rumsfeld v. Forum for Acad. and Institutional Rts. ("FAIR")*, 547 U.S. 47, 70 (2006), the Act also does not implicate, much less burden, the Coalition's First Amendment associational rights directly or indirectly.

**3.** Further, the Inquiry and No Action Provisions of the Act prohibitions are plain. Despite the Coalition's best efforts to muddy these prohibitions with hypotheticals, the Coalition fails to prove that a reasonable person would not understand what actions he or she could not take.

**4.** Lastly, the Act regulates speech regarding the provision of services, i.e., commercial speech. It is thus subject to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). It satisfies this standard.

## ARGUMENT

### I.  The Act Does Not Violate Substantive Due Process.

The Coalition asserts that the Act violates Coalition Members' "fundamental rights" under the Due Process Clause of the Fourteenth Amendment. "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations and internal quotation marks omitted). The alleged right to keep guns out of vehicles parking lots is not one of them. *Fla. Retail Fed'n, Inc., v. Att'y Gen. of Fla.*, 576 F.

Supp. 2d 1281, 1287-88 (N.D. Fla. 2008).  This claim is thus subject to rational basis review, which the Act satisfies.

### A. The Coalition Does Not Have A Fundamental Right To Exclude Firearms From Its Parking Lots.

To be sure, Coalition Members have *some* fundamental rights in their property.  But their allegations do not implicate any of those rights.  *Cf. Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process.").  To the extent Coalition Members own property, they have a fundamental right to "possess, use, and dispose of" it, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-36 (1982) (citations and internal quotation marks omitted).  The Coalition does not prove the Act precludes them from doing any of this.  To the extent it asserts the Act interferes with property use, the Coalition fails to recognize that "[e]qually fundamental with the private [property] right is that of the public to regulate it in the common interest."  *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 84-85 (1980) (citations and ellipsis omitted).  Use restrictions have been long upheld.  *Cf. Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001) (noting the State's authority to enforce land-use restrictions).

The Coalition attempts to bypass this by housing the "right" to ban firearms from their properties under the "right to be protect one's personal security" and the right to control one's property.  ECF No. 39 at 25-27.  This attempt is unavailing.  "[I]dentifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short."  *Lambert v. Hartman*, 517 F.3d 433, at 443 (6th Cir. 2008) (quotation omitted).  The Coalition cannot prove that its new "right" fits with this list.

*First*, the right to personal security is a bad fit for the Coalition's claims.  The cases the Coalition relies on highlights this.  *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (corporal punishment); *Kennedy v. Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (baiting violence against complainant by informing alleged perpetrator her identity); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990) (right to refuse treatment).  This is because violations of the right to "personal security usually arise in the context of government-imposed punishment or physical restraint." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998).

Courts have only extended the right to personal security beyond this context to physical, bodily intrusions.[3]  Even in those cases, the courts found this right fundamental because "the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim . . . strips the very essence of personhood." *Kallstrom*, 136 F.3d at 1063 (quoting *Doe v. Claiborne Cnty. Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996); quotation marks omitted).  That cannot be said here.

After narrowing the Coalition's cases to those not involving bodily injury, the courts addressing these claims found there was no right to personal security.  *See Lambert*, 517 F.3d at 443-44 (no right in disclosure of identifying information did implicate right to personal security). The lone case the Coalition cites recognizing anything approaching its "right" was decided by the Ninth Circuit; neither this Court nor the Fourth Circuit have blessed such an approach.  *See Kennedy*, 439 F.3d at 1062.  In any event, that case turned on a fact-specific analysis where a state

---

[3] *See, e.g.*, *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (refusing unwanted medical treatment); *Winston v. Lee*, 470 U.S. 753, 764-66 (1985) (compelling a robbery suspect to undergo surgical operation to remove a bullet); *Doe v. Claiborne Cnty. Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (sexual assault by a government actor); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-52 (5th Cir. 1994) (*en banc*) (same); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989) (same).

officer affirmatively placed a specific plaintiff in serious danger.  The existence of a generally applicable law like the Act could not meet that demanding standard.  *See id.*

In contrast, the Second Amendment is a firmly established fundamental right.  So to the extent there's any question whether this Court should recognize a new "fundamental right" in this context, the State's interests in preserving Second Amendment rights, which also support personal security, would cut against that outcome.

*Second*, while the right to exclude may appear relevant, upon closer review, it also is not a good fit.  The Coalition largely relies on historical treatises focusing on common law rights to prove its application.  *See* ECF No. 39 at 25-26.  "It is true that property rights have been important common law rights throughout history and that they are protected in many situations by procedural due process.  Nevertheless, common law rights are not equivalent to fundamental rights, which are created only by the Constitution itself."  *DeKalb Stone, Inc. v. Cnty. of DeKalb, Georgia*, 106 F.3d 956, 959 n.6 (11th Cir. 1997).  The Framers knew how to incorporate common law property rights and rights beyond ordinary contract and tort law remedies into the Constitution, such as the Fifth Amendment right against takings without just compensation.  They declined to do so for this part of the "bundle of sticks" of property rights.

The only case that the Coalition mentions on this point involves the reverse of this situation.  *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1249 (11th Cir. 2012).  In that case, *the government* excluded firearms from certain private properties—a power which is long-established.  *See id.*  The right of the government to balance the Second Amendment rights and private property rights in this way does not preclude it from balancing them another way as West Virginia and 21 other States have done.  At most, it highlights that fundamental rights are not absolute.  More

importantly, it does not create a new fundamental right to precluding guns from parking lots out of the existing private property right.

This does not change, as the Coalition argues, simply because they want to exclude firearms "for the purpose of maintaining peaceable assembly." ECF No. 39 at 20. The fundamental right to peaceably assemble refers to the right of the people to assemble and not the right to dictate to others how they can exercise that right. *See* U.S. Const. amend. I.

### B.  The Act Satisfies Rational Basis Review.

"Where a fundamental right or suspect classification is not at issue, a statute is accorded a strong presumption of validity." *Prynne v. Settle*, 2021 WL 717054, at *8 (4th Cir. 2021) (quotation omitted). The Supreme Court has "long eschewed . . . heightened scrutiny when addressing substantive due process challenges to government regulation." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). Thus courts reviewing similar legislation applied rational basis review. *See, e.g.*, *Ramsey Winch Inc., v. Henry*, 555 F.3d 1199, 1210-11 (10th Cir. 2009).

Under rational basis review, "[t]he law should be upheld unless there is no reasonably conceivable state of facts that could provide a rational basis for [the statute]." *Prynne*, 2021 WL 717054, at *8 (quotation omitted). "Moreover, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (quotation omitted). "[T]he Court is compelled to accept a legislature's generalizations." *Id.* Thus to succeed on this claim, the Coalition must prove that the Act is "unreasonable, arbitrary or capricious" and has no "real and substantial relation to the objective sought to be attained." *PruneYard*, 447 U.S. at 85 (quotation omitted). It cannot do so.

*First*, the Act protects fundamental rights by preventing businesses and employers from prohibiting invitees, customers, and employees from—or conditioning employment on an

8

agreement not to—have a gun in a vehicle in the parking lot.  Advancing a constitutional right is a sufficient interest under rational basis.  *See PruneYard*, 447 U.S. at 81 (noting that the state may exercise its police power to adopt individual liberties more expansive than those conferred by the Constitution).  In upholding Oklahoma's Parking Lot Law, the Tenth Circuit found that "one could argue that the Amendments are simply meant to expand (or secure) the Second Amendment right to bear arms."  *Ramsey*, 555 F.3d at 1211

 *Second*, the Act promotes public safety.  Both courts that have addressed Parking Lot Laws held that "a reasonable legislator [could] conclude that allowing workers with concealed-carry permits to keep guns in business parking lots would have . . . a small net positive . . . on overall public safety.  So a state legislature might reasonably choose to give such a worker a right to keep a gun in a vehicle in the parking lot."  *Fla. Retail*, 576 F. Supp. 2d at 1291.  The Coalition argues that the law exacerbates danger.  ECF No. 39 at 27.  "The very fact that this question is so hotly debated, however, is evidence enough that a rational basis exists."  *Ramsey*, 555 F.3d at 1211.

 These interests satisfy rational basis review.  *See Ramsey*, 555 F.3d at 1211; *Fla. Retail*, 576 F. Supp. 2d at 1291.  The West Virginia legislature "was within [its] constitutional authority" in choosing a side on the debate that it believed fit best for West Virginia.  *Fla. Retail*, 576 F. Supp. 2d at 1291.  As a result, the Coalition's substantive due process claim fails.

## II. The Act Does Not Violate The Coalition's Members' Free Association Rights.

 The Coalition next challenges the Act on freedom of association grounds.  The First Amendment protects the right to associate (and not associate) with others.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  Thus the government cannot "intru[de] into the internal structure or affairs of an association" by "forc[ing] the group to accept members it does not desire."  *Id.* at 623. Like all rights, this one can "be overridden 'by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly

less restrictive of associational freedoms.'" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (quoting *Roberts*, 468 U.S. at 623). But this Court need not reach that test because the Act does not infringe on the Coalition's freedom to associate.

Even assuming the Coalition and its members are expressive associations, "nothing about the statute affects the composition of the group," *Rumsfeld v. Forum for Acad. and Institutional Rts. ("FAIR")*, 547 U.S. 47, 70 (2006), nor does the Coalition argue it does. Yes, the freedom of association "protects more than just a group's membership decisions," *id.*, so the government cannot "impose penalties," "withhold benefits from individuals because of their membership," or "require disclosure of the fact of membership in a group seeking anonymity." *Roberts*, 468 U.S. at 622-23. But the Coalition does not allege the Act does any of that.

The Coalition only asserts that the Act impedes on its "expressive associational" commitment to non-violence by allowing guns locked in private vehicles in Coalition Members' parking lots. *See* ECF No. 39 at 22-23. As the Supreme Court explained in *FAIR*, which the Coalition cites but ignores the bulk of, this is not a cognizable associational freedom claim. *See* 547 U.S. at 70. It instead "stretch[es] First Amendment doctrines well beyond the sort of activities these doctrines protect." *Id.* at 70.

In *FAIR*, law schools asserted freedom of association claims against the Department of Defense challenging the Solomon Act which withheld funding from institutions of higher education that prohibit access for and assistance to military recruiters. 547 U.S. at 51. The Court rejected this argument finding that "[a] military recruiter's mere presence on campus does not violate a law school's right to associate, regardless of how repugnant the law school considers the recruiter's message." *Id.* at 70. The Court held that the Solomon Act did not directly violate the law schools' associational freedoms because law schools only had to "associate[] with military

recruiters in the sense that they interact[ed] with them"; the law did not transform recruiters into part of the school.  *Id.* at 69.  It further rejected the law schools' argument that the law indirectly violated their associational freedoms.  It emphasized that access statutes like the Solomon Act do not have the "similar effect on . . . associational rights" as the traditional intrusions described above.  *Id.* at 70.  Thus the Court found, despite any incidental effect on association rights, the law schools' attempts to paint the Solomon Act as similarly intrusive "overstates the . . . the impact of the [acts], while exaggerating the reach of [] First Amendment precedents."  *Id.*

The Coalition's associational claim here is like the claims in *FAIR* and thus fails for the same reasons.  *First*, like the Solomon Act, the Act here governs access by allowing individuals with guns secured in their vehicles unowned by the Coalition to enter their premises.  It does not require Coalition Members to allow guns inside any building and does not prevent them from expressing any beliefs that they may hold regarding firearms.  The Act requires less interaction between the Coalition Members and what they find repugnant than in *FAIR*.  Thus allowing access for these individuals will not give *anyone* the impression that the Coalition supports guns, much less gun violence.  *See PruneYard*, 447 U.S. at 85-88 ("The views expressed by members of the public . . . will not likely be identified with those of the owner.").

The Coalition argues that the Act impedes their ability to "teach by example" but this is a rebranding of the same argument in *FAIR* that the military's presence impedes the law schools' ability to condemn the military.  Coalition Members can still choose not to keep a firearm in their vehicle on shelter property.  They can also still "voice their disproval" of domestic violence—their core mission—and educate others on the use of firearms in those incidents.  *See* ECF No. 39 at 8.  Thus, the Coalition's argument requires the same fate as the argument in *FAIR*.  The Coalition's claim is therefore critically different from those the Court found were an associational violation.

11

*See*, e.g., *Dale*, 530 U.S. at 648 (challenging requiring the Boy Scouts to accept a member antithetical to the group's mission).

*Second*, the Act does not indirectly infringe on Coalition Members' associational rights by making membership less desirable.  Again, the Coalition's claim is unlike any Supreme Court precedent finding government action made an association undesirable.  The Act does not require disclosure of membership lists for groups seeking anonymity, *see Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 101-02 (1982), or impose penalties or withhold benefits based on membership in a disfavored group.  *See Healy v. James*, 408 U.S. 169, 180-84 (1972).

The Coalition argues that the Act makes membership less desirable by making their environment feel unsafe.  But the Coalition notes that the Act only allows firearms on the parking lot secured in vehicles and out of view and prevents businesses from asking about the presence of a firearm in the parking lot.  W. Va. Code § 61-7-14(d)(1)(A)-(D).  Businesses can still prevent open or concealed carry on their properties.  *See id.* at 61-7-14(b).  And it is likely that no one will even know there is a firearm in the parking lot—one of the Coalition's main contentions with the Act—and if brought outside the vehicle, the Coalition can take necessary action.

In sum, "a speaker cannot 'erect a shield' against laws requiring access 'simply by asserting' that mere association 'would impair its message.'"  *FAIR*, 547 U.S. at 69 (quoting *Dale*, 530 U.S. at 653).  The Coalition's freedom of association claim fails.

## III.    The Act Is Not Unconstitutionally Vague.

Despite outlining in detail how the Act impedes its mission, the Coalition claims the Act is vague.  To prove a statute is unconstitutionally vague, a plaintiff must prove that the law (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or (2) "authorizes or even encourages arbitrary and discriminatory enforcement."  *Stover v. Fingerhut Direct Mktg., Inc.*, 709 F. Supp. 2d 473, 480 (S.D. W. Va.

2012) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).  The level of clarity required shifts with "the nature of the enactment."  *Vill. of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

The Coalition argues the Inquiry and No Action Provisions' prohibition against "violat[ing] the privacy rights" of customers, employees, and invitees is vague.  ECF No. 39 at 28. The "words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).  The Coalition ignores the clarifying word that follows the contested words—"by"—and thus fails to show that a reasonable person could not understand what is prohibited under either provision.

As to the Inquiry Provision, "[w]hen speech is involved, rigorous adherence to those requirements" is required.  *FCC v. Fox Television Stations*, 567 U.S. 239, 253-54 (2012).  "That said, 'precise guidance have never been required even of regulations that restrict expressive activity.'"  *United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).  A plaintiff must prove that the "prohibited conduct are so uncertain that a person is likely to refrain from legitimate exercises his First Amendment rights for fear of running afoul of the law."  *Stover*, 709 F. Supp. 2d at 480.

The Inquiry Provision provides that businesses cannot violate privacy rights of firearms owners "*by*" prohibiting businesses from (A) verbally or in written form asking the customer, employee, or invitee if he or she does or does not have a firearm secured in his or her vehicle in the parking lot or (B) searching vehicles in the parking lot to determine whether there is a firearm in the vehicle absent law enforcement exceptions.  W. Va. Code § 61-7-14(d)(2)(A)-(B).  The plain words in subsections (d)(2)(A) and (B) specify the exact actions businesses cannot take to violate privacy rights.  This statutory language does not invite "wholly subjective judgments" about the

13

scope of proscribed conduct, such as statutes "criminalizing 'annoying' or 'indecent' conduct." *Miselis*, 972 F.3d at 544.  An "ordinary person exercising ordinary common sense can sufficiently understand" that it cannot violate the privacy rights of the covered persons by taking the enumerated actions.  *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010).

The can be said of the No Action Provision.  In *Ramsey*, the Tenth Circuit addressed a similar vagueness challenge to a Parking Lot Law.  *See* 555 F.3d at 1211 n.11.  It ultimately held that Oklahoma's statute "clearly forbid the conduct Plaintiffs seek to continue, i.e., prohibiting employees from storing firearms in vehicles on company property."  *Id.*  Thus the statute was not void for vagueness.  *Id.*  More recently, the Sixth Circuit found nearly identical statutory language—in that case "take any action harmful to any person"—to be "plain, common language." *United States v. Edwards*, 783 F. App'x. 540, 545 (6th Cir. 2019).  In finding that the statute passed constitutional muster, the Sixth Circuit noted that while this language could be "potentially sweeping" it is not vague.  *Id.*; *see also Hill*, 530 U.S. at 732 ("[W]e can never expect mathematical certainty from our language.").

Moreover, other components of the Act "provide sufficient narrowing context."  *Miselis*, 972 F.3d at 545.  The Act limits actions to those based on "verbal or written statements of any party concerning possession of a firearm stored inside a motor vehicle in a parking lot for lawful purposes" and exempts actions taken pursuant to threats.  W. Va. Code § 61-7-14(d)(2)(C).  And the broader bounds of the protected firearm possession provide more guidance on what actions would be prohibited.

To show that the No Action Provision is vague, the Coalition presents hypotheticals by Coalition Members about potential actions they want to take.  But these potential actions fall within the text of the prohibitions of the statute:  "One to whose conduct a statute clearly applies may not

14

successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974); *see also*

*Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 2015) (applying *Parker* to First Amendment

challenge to robo-call statute); *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 139 (4th Cir.

2011) (applying *Parker* to First Amendment challenge to a public assembly ordinance).

One member asked "whether we can ask [a] person to move the[ir] weapon off of [the]

property for the safety of our residents and staff." ECF No. 39 at 30-31. This is explicitly barred

under the Act's prohibition against barring lawfully owned firearms from being secured in vehicles

in parking lots. W. Va. Code § 61-7-14(d). Another member asked whether they could ask

residents about the presence of a gun in their vehicles. This, too, squarely falls within the Inquiry

Provision's prohibition against asking about the presence of a firearm in the parking lot. The

Coalition has not identified any vagueness within the Act but simply aspects of it with which it

disagrees. Its claim must fail.

### IV. The Act Does Not Violate Free Speech.

Lastly, the Coalition mounts a facial free speech challenge against the Inquiry and No

Action Provisions. The Inquiry Provision is a content-based regulation but the Coalition too

quickly asserts the statute is unconstitutional. It tellingly ignores that the only court to address

identical statutory language found it constitutional. *See Fla. Retail*, 576 F. Supp. 2d at 1293.

Further, the No Action Provision regulates conduct, not speech and to the extent it regulates

speech, it is constitutional for the same reasons as the Inquiry Provision.

#### A. The Inquiry Provision Constitutionally Regulates Commercial Speech.

To succeed on a facial free speech challenge, the Coalition must show "that no set of

circumstances exists under which the law would be valid" or that "a substantial number of its

applications are unconstitutional." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor &*

*City Council of Balt.*, 721 F.3d 264, 284 (4th Cir. 2013) (quoting *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)).  The Coalition fails to prove either.

The Inquiry Provision governs what business owners may ask about the presence of firearms in vehicles in the parking lot.  *See* W. Va. Code § 61-7-14(d)(2)(A).  Content- and speaker-based speech regulations often trigger strict scrutiny, but this is not a blanket rule.  The Supreme Court "has distinguished for First Amendment purposes among different contexts in which speech takes place."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 582 (2011).

One context the Court has found the First Amendment imposes "looser constraints" is commercial speech.  *Sorrell*, 564 U.S. at 583.  Commercial speech typically "proposes a commercial transaction" but this definition is not static and "application of [it] is not always a simple matter."  *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin*., 191 F.3d 429, 440 (4th Cir. 1999).  "[E]ven where speech 'cannot be characterized merely as proposals to engage in commercial transactions,' the speech may yet be deemed commercial; in that event, 'proper classification as commercial or noncommercial speech . . . presents a closer question.'"  *Greater Balt.*, 721 F.3d at 282 (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).

The distinction between commercial and other speech "justify a more permissive approach to regulation of the manner of commercial speech."  *Cntr. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 578 (1980).  Content-based regulations on commercial speech are only subject to intermediate scrutiny and are constitutional "as long as they also 'directly advance' a 'substantial' government interest that could not "be served as well by a more limited restriction."  *Sorrell*, 564 U.S. at 583 (quoting *Cntr. Hudson*, 447 U.S. at 564).

The Coalition argues in a footnote that the Supreme Court has retreated from treating commercial speech differently.  ECF No. 39 at 12 n.1.  But the Court has never overturned *Central*

*Hudson*'s intermediate scrutiny standard for commercial speech:  The Court's "decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252-53 (1998). The Court made this clear in its most recent iteration on this issue, stating that it was not "expand[ing] existing First Amendment doctrine or . . . otherwise affect[ing] traditional or ordinary economic regulation of commercial activity." *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2347 (2020); *see also Int'l Outdoor Inc. v. City of Troy, Mich.,* 974 F.3d 690, 703 (6th Cir. 2020) ("[S]everal circuit courts have held that . . . the *Central Hudson* standard still applies.").[4]

The Inquiry Provision regulates commercial speech and is thus subject to intermediate rather than strict scrutiny.  Appellate courts addressing inquiry provisions analogous to the one here have reviewed them under intermediate scrutiny.  The Third Circuit applying *Central Hudson*'s intermediate scrutiny upheld a Philadelphia ordinance prohibiting employers from asking potential employees about past salaries finding that it constitutionally governs commercial speech.  *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 137-38 (3d Cir. 2020).  The Eleventh Circuit similarly applied intermediate scrutiny to a Florida law that barred medical professionals asking whether a patient or a patient's family member owned a firearm or ammunition or whether there was a firearm in the patient's private home.  *See Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1313 (11th Cir. 2017) (*en banc*).  The court ultimately severed this provision, not because it was content-based, but because the court found it did not advance the legislature's stated interests based on the factual record.  *Id.*  This Court should find that the Inquiry Provision regulates commercial speech and likewise review it under intermediate scrutiny.

---

[4] *See Aptive Envt'l, LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020); *Vugo, Inc. v. N.Y.C*, 931 F.3d 42, 44–45 (2d Cir. 2019), *cert. denied sub nom.* 140 S. Ct. 2717, 206 (2020); *Lone Star Security & Video, Inc. v. City of L.A.*, 827 F.3d 1192, 1200 (9th Cir. 2016).

The Inquiry Provision satisfies intermediate scrutiny because it is related to a substantial governmental interest. *Cf. Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013) ("*Central Hudson* applies to both facial and as-applied challenges.") (quotation omitted). *First*, the Inquiry Provision protects Second Amendment rights against private encumbrances including "discrimination on the basis of the[] exercise of the[] right to bear arms." It also protects the privacy those exercising this right. *Wollschlaeger*, 848 F.3d at 1327 (Pryor, J. concurring). The Eleventh Circuit found that these are "substantial governmental interests." *Id.* at 1312, 1314.

*Second*, the Inquiry Provision advances this interest because it prohibits businesses knowing and thus gaining the ability to discriminate against covered persons with guns. The Coalition essentially concedes that the Inquiry Provision advances this interest by asserting that its members previously encumbered West Virginians' Second Amendment and privacy rights by inquiring into the possession of firearms and banning them from the property. *See* ECF No. 39 at 13-14. The Inquiry Provision prevents this result by prohibiting property owners from taking the first step and asking, thus alleviating these substantial concerns "to a material degree." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995). And it leaves open many other avenues to property owners to protect their property. The Coalition even notes they may ask about whether there is a firearm on someone's person. ECF No. 39 at 21. Even if it is somewhat overbroad, "it would not prevent the Inquiry Provision from surviving intermediate scrutiny." *Greater Phila. Chamber of Com.*, 949 F.3d at 156.

The Coalition asserts that the Inquiry Provision is not narrowly tailored to advance this interest; but, under intermediate scrutiny, the least-restrictive method of advancing a substantial governmental interest is unnecessary. *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989). The Act "need only be a 'reasonable fit between the legislature's ends and the

18

means chosen to accomplish those ends.'" *Greater Phila. Chamber of Com.*, 949 F.3d at 138 (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 528 (2001)).  The Legislature rightly narrowed its regulation to the "'part' of the speech that causes harm" it wishes to curve—the inquiry. *Id.* at 156.  The fit may not be "perfect" but it is "reasonable," which is what is required. *Id.* at 154.

The Coalition has simply not proven that the Act's application is unconstitutional in all its applications, or even a majority of applications.  The Coalition points to caselaw finding that property owners can regulate their property despite Second Amendment protections.  *See United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019).  The Coalition ignores that the Act protects against more than direct intrusions on the Second Amendment, but also indirect intrusions.  More importantly, this caselaw does not establish that *States cannot* regulate private property for the benefit of the Second Amendment.

Further, the Coalition points to the Act's application to its members as a circumstance under which the Act would be unconstitutional.  *See Greater Balt.*, 721 F.3d at 282.  This is insufficient for a facial challenge.  Nevertheless, the Act is constitutional as-applied to the Coalition.  The Coalition exhaustively describes how this speech is needed to provide safe services for shelter visitors and residents and "to retain and attract residents."  *See* ECF No. 39 at 9-15, 23.  So, in the Coalition's own words, the speech relates to the Coalition's provision of services and is a key component of their ability to attract residents giving an economic motivation for the speech.  The Fourth Circuit has noted that speech "directed at the providing of services rather than toward an exchange of ideas" can be commercial speech.  *Greater Balt.*, 721 F.3d at 286 (quoting *Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176 (N.D. 1986), *cert. denied*, 476 U.S. 1108

(1986) (mem.); internal quotation marks omitted)). Thus, applying *Central Hudson*, the Act would be constitutional for the same reasons as above as-applied to the Coalition.

### B. The No Action Provision Regulates Conduct, Not Speech.

The Coalition also challenges the No Action Provision as unconstitutionally encumbering free speech. Yet the No Action Provision governs conduct, not speech. It "affects what [businesses] must do"—specifically, not take any action upon learning of the presence of a firearm in a vehicle in the parking lot—"not what they may or may not say." *FAIR*, 547 U.S. 47 at 60. As the Court found in *FAIR*, while "recruiting assistance provided by the schools often includes elements of speech," that is a "far cry" from regulating speech. *Id.* at 62. That said, even if this Court finds that the No Action Provision regulates free speech, it is constitutional for the same reasons as the Inquiry Provision. Thus the Coalition's free speech claim fails on both fronts.

Importantly, if this Court agrees that the Inquiry Provision is unconstitutional, West Virginia law provides that "every provisions of every section, article or chapter of" the West Virginia Code is severable. W. Va. Code § 2-2-10(cc). This Court should thus uphold the rest of the Act even if it finds that the Inquiry Provision is unconstitutional.

### CONCLUSION

The Court should grant the Attorney General's cross-motion for summary judgment and deny the Coalition's motion.

Respectfully submitted,

PATRICK MORRISEY
 ATTORNEY GENERAL


/s/ Steven A. Travis
Lindsay S. See (WV Bar #13360)
 *Solicitor General*

20

Douglas P. Buffington, II (WV Bar #8157)
 *Chief Deputy Attorney General*
Steven A. Travis (WV Bar #10872)
 *Deputy General Counsel*
Jessica A. Lee (WV Bar #13751)
 *Assistant Solicitor General*
Office of the West Virginia Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Email: Steven.A.Travis@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

DATE:  April 5, 2021