**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

THE WEST VIRGINIA COALITION
AGAINST DOMESTIC VIOLENCE, INC.,

     *Plaintiff,*

     v.                              Case No. 2:19-cv-00434
                                        (Judge John T. Copenhaver, Jr.)

PATRICK J. MORRISEY, in his official
capacity as Attorney General for the
State of West Virginia,

     *Defendant.*

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.   The Act Does Not Violate The Coalition's Substantive Due Process Rights ................... 2

     A.  The Coalition's Alleged Right to Exclude Firearms From Its Property is Not Absolute or Fundamental ......................................................................................... 2

     B.  The Act Satisfies Rational Basis Review ............................................................. 4

   II.  The Act Does Not Violate The Coalition's Members' Free Association Rights .............. 9

   III.  The Act Is Not Unconstitutionally Vague .................................................................. 11

   IV.  The Act Does Not Violate Free Speech Rights ........................................................... 14

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benham v. City of Charlotte, N.C.*,
635 F.3d 129 (4th Cir. 2011) ...................................................................14

*Biden v. Knight First Amendment Inst. at Columbia Univ.*,
141 S. Ct. 1220 (2021).............................................................................2

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000)................................................................................10

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
459 U.S. 87 (1982)..................................................................................10

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) ...................................................................14

*D.G. Rest. Corp. v. City of Myrtle Beach*,
953 F.2d 140 (4th Cir. 1991) ...................................................................19

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..................................................................................1

*Durstein v. Alexander*,
2021 WL 1085297 (S.D. W. Va. Mar. 19, 2021) ....................................19

*Educ. Media Co. at Va. Tech, Inc. v. Insley*,
731 F.3d 291 (4th Cir. 2013) ...................................................................15

*Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*,
576 F. Supp. 2d 1281 (N.D. Fla. 2008).......................................3, 4, 5, 7, 8, 9, 17

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1249 (11th Cir. 2012) .................................................................6

*Gould v. Morgan*,
907 F.3d 659 (1st Cir. 2018).....................................................................5

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
721 F.3d 264 (4th Cir. 2013) ...................................................................15

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*,
879 F.3d 101 (4th Cir. 2018) ...................................................................16

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia.*,
  949 F.3d 116 (3d Cir. 2020)...........................................................................................16

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
  700 F. App'x 251 (4th Cir. 2017) ..................................................................................16

*Healy v. James*,
  408 U.S. 169 (1972)........................................................................................................10

*Heart of Atlanta Motel, Inc. v. United States*,
  379 U.S. 241 (1964).....................................................................................................2, 3

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010)............................................................................................................18

*Imaginary Images, Inc. v. Evans*,
  612 F.3d 736 (4th Cir. 2010) .........................................................................................13

*Kachalsky v. Cnty. of Westchester*,
  701 F.3d 81 (2d Cir. 2012)...............................................................................................5

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) .........................................................................................4

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) ...........................................................................................7

*Lingle v. Chevron U.S.A., Inc.*,
  544 U.S. 528 (2005).........................................................................................................4

*Lombard v. Louisiana*,
  373 U.S. 267 (1963).........................................................................................................2

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010).........................................................................................................1

*Moore v. Madigan*,
  702 F.3d 933 (7th Cir. 2012) ...........................................................................................5

*Moseley v. Branker*,
  550 F.3d 312 (4th Cir. 2008) ......................................................................................6, 12

*New York Rifle & Pistol Association v. Corlett*,
  2021 WL 1602643 (Apr. 26, 2021) ..................................................................................1

iii

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

*Parker v. Levy*,
   417 U.S. 733 (1974) ................................................................................14

*PruneYard Shopping Ctr. v. Robins*,
   447 U.S. 74 (1980) .................................................................................17

*Ramsey Winch Inc., v. Henry*,
   555 F.3d 1199 (10th Cir. 2009) .............................................3, 4, 5, 6, 9, 14

*Rumsfeld v. Forum for Acad. and Institutional Rts. ("FAIR")*,
   547 U.S. 47 (2006) ..............................................................9, 10, 11, 18, 19

*Runyon v. McCrary*,
   427 U.S. 160 (1976) ...............................................................................17

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................................17

*Stover v. Fingerhut Direct Mktg., Inc.*,
   709 F. Supp. 2d 473 (S.D. W. Va. 2012) .................................................13

*United States v. Class*,
   930 F.3d 460 (D.C. Cir. 2019) .................................................................6

*United States v. Edwards*,
   783 F. App'x. 540 (6th Cir. 2019) ..........................................................14

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020) .............................................................12, 14

*Woollard v. Gallagher*,
   712 F.3d 865 (4th Cir. 2013) ....................................................................5

*Wrenn v. District of Columbia*,
   864 F.3d 650 (D.C. Cir. 2017) .................................................................5

**Statutes**

50 U.S.C. § 3806(j) ......................................................................................7

Ala. Code § 13a-11-90 (2017) ......................................................................1

Alaska Stat. § 18.65.800 (2017) ...................................................................1

Ariz. Rev. Stat. Ann. § 12-781 (2017) ..........................................................1

iv

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Fla. Stat. § 790.251 (2017)................................................................................................1

Ga. Code Ann. § 16-11-135 (2017) ....................................................................................1

Idaho Code § 5-341 (2017) .................................................................................................1

Ill. Comp. Stat. § 66/65 (2017) ..........................................................................................1

Ind. Code Ann. § 34-28-7-2 (2017) ....................................................................................1

Kan. Stat. Ann. § 75-7c10 (2017) .......................................................................................1

Ky. Rev. Stat. Ann. § 237.106 (West 2017) .......................................................................1

La. Rev. Stat. § 32:292.1 (2017) .........................................................................................1

Me. Stat. Tit. 26, § 600 (2017)............................................................................................1

Minn. Stat. § 624.714(18) (2017) .......................................................................................1

Miss. Code Ann. § 45-9-55 (2017) .....................................................................................1

N.D. Cent. Code § 62.1-02-13 (2017) ................................................................................1

Neb. Rev. Stat. § 69-2441 (2017) .......................................................................................1

Okla. Stat. Tit. 21, §§ 1289.7a, 1290.22 (2017) ................................................................1

Tenn. Code Ann. §§ 39-17-1313, 50-1-312 .......................................................................1

Tex. Labor Code Ann. § 52.061 (West 2017).....................................................................1

Utah Code Ann. § 4-45-103 (2017) ....................................................................................1

W. Va. Code §§ 48-27-403 .................................................................................................8

W. Va. Code § 61-7-7 .........................................................................................................8

W. Va. Code § 61-7-14(d) ....................................................................................10, 13, 15

Wis. Stat. § 175.60(15m) (2017) ........................................................................................1

v

## TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

**Other Authorities**

Joseph Blocher & Darrell A.H. Miller, *The Positive Second Amendment: Rights,*
*Regulation, and the Future of* Heller (2018) ...........................................................................6

Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated*
*Employees' Potential Rights for Violations of Parking Lot Laws,*
78 La. L. Rev. 989 (2018)....................................................................................................1, 3

Michael A. Carrier, *Cabining Intellectual Property Through A Property*
*Paradigm,*
54 Duke L. J. 1 (2004) .............................................................................................................2

Selective Service System, "Conscientious Objectors,"
https://www.sss.gov/register/alternative-service/ ...................................................................7

## INTRODUCTION

Over a decade ago, the Supreme Court of the United States recognized that the Second Amendment encompasses the fundamental individual right to keep and bear arms for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570 (2008). Because this right is "deeply rooted in this Nation's history and tradition," the Court found it "unmistakably" applied to the States. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767, 778-779 (2010) (quotation omitted). And just last month the Supreme Court poised itself to define whether the right extends with equal force outside the home by granting a writ of certiorari in *New York Rifle & Pistol Association v. Corlett*. 2021 WL 1602643 (Apr. 26, 2021) (mem.).

In the Court's ten-year silence, twenty-two States, including West Virginia, have applied and embraced *Heller* by passing Parking Lot Laws recognizing that leaving the home does not extinguish this right.[1] "[C]ourts [have] largely upheld" these laws. Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws*, 78 La. L. Rev. 989, 999 (2018). Yet Plaintiff West Virginia Coalition Against Domestic Violence, Inc. ("Coalition") joins the fray and asks this Court to ignore the State's interest in protecting the Second Amendment in favor of an absolutist view of its mixed bag of asserted rights. But the Second Amendment is not a closeted right and the Coalition fails to prove at every turn—as it bears the burden to do—that in protecting its citizens' Second Amendment

---

[1] *See, e.g.*, Ala. Code § 13a-11-90 (2017); Alaska Stat. § 18.65.800 (2017); Ariz. Rev. Stat. Ann. § 12-781 (2017); Fla. Stat. § 790.251 (2017); Ga. Code Ann. § 16-11-135 (2017); Idaho Code § 5-341 (2017); 430 Ill. Comp. Stat. § 66/65 (2017); Ind. Code Ann. § 34-28-7-2 (2017); Kan. Stat. Ann. § 75-7c10 (2017); Ky. Rev. Stat. Ann. § 237.106 (West 2017); La. Rev. Stat. § 32:292.1 (2017); Me. Stat. Tit. 26, § 600 (2017); Minn. Stat. § 624.714(18) (2017); Miss. Code Ann. § 45-9-55 (2017); Neb. Rev. Stat. § 69-2441 (2017); N.D. Cent. Code § 62.1-02-13 (2017); Okla. Stat. Tit. 21, §§ 1289.7a, 1290.22 (2017); Tenn. Code Ann. §§ 39-17-1313, 50-1-312; Tex. Labor Code Ann. § 52.061 (West 2017); Utah Code Ann. § 4-45-103 (2017); Wis. Stat. § 175.60(15m) (2017).

rights by enacting the Business Liability Protection Act ("Act"), West Virginia violated the Coalition's asserted rights.

## ARGUMENT

### I.     The Act Does Not Violate The Coalition's Substantive Due Process Rights.

### A. The Coalition's Alleged Right to Exclude Firearms From Its Property is Not Absolute or Fundamental.

The Coalition asserts several times that the Second Amendment is not absolute and must yield to its right to exclude firearms from its property for personal security.  The Coalition has not established that the right to exclude firearms from its parking lots is fundamental—unlike the Second Amendment right it asks this Court to sacrifice.  In any event, the right to personal security has never been applied like the Coalition asks this Court to apply it here.

As an initial matter, "[h]istorically, at least two legal doctrines limited a company's right to exclude.  First, our legal system and its British predecessor have long subjected certain businesses, known as common carriers to . . . a general requirement to serve all comers . . . Second, governments have limited a company's right to exclude when that company is a public accommodation."  *Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1222-23 (2021) (mem.) (Thomas, J. concurring).  For example, the Supreme Court has long upheld Congress's ability to prohibit places of public accommodations from excluding those from their property based on race.  *See, e.g.*, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 261-62 (1964).  And long before this, the common law required innkeepers and common carriers to serve all potential customers.  *See Lombard v. Louisiana*, 373 U.S. 267, 276-77 & n.6 (1963) (Douglas, J., concurring).  Easements are likewise earlier examples of the limits on the right to exclude from private property.  Michael A. Carrier, *Cabining Intellectual Property Through A Property Paradigm*, 54 Duke L. J. 1, 55-56 (2004).

It is well-established that government can require businesses to not exclude where a constitutional right is on the other side of the scale.  The right to exclude is not enough to overcome the government's efforts to protect citizens' undisputed constitutional rights.  This was not true in the civil rights context, and courts have found this untrue for parking lot laws.  In *Heart of Atlanta Motel*, the Supreme Court noted that "[t]hirty-two states" had similar public accommodation laws and that the Court had "repeatedly held . . . that such laws do not violate the Due Process Clause of the Fourteenth Amendment."  379 U.S. at 259-60.  It also noted that no attacks have "been successful, either in federal or state courts.  Indeed, in some cases the Due Process and Equal Protection Clause objections have been specifically discarded in this Court."  *Id.* at 260 (citation omitted).  The Court did not view the law under strict scrutiny but found that the only questions were "(1) whether Congress had a rational basis for finding that racial discrimination by motels affected commerce, and (2) if it had such a basis, whether the means it selected to eliminate that evil are reasonable and appropriate."  *Id.* at 258.  The Coalition cannot show that Second Amendment rights require a materially different result.

Here, too, twenty-one other States have parking lot laws.[2]  "The handful of employers' challenges to Parking Lot laws have been unsuccessful."  Malerie Leigh Bulot, *"Bring Your Gun to Work" and You're Fired: Terminated Employees' Potential Rights for Violations of Parking Lot Laws*, 78 La. L. Rev. 989, 1005 (2018).  The Tenth Circuit and the Northern District of Florida have addressed similar parking lot laws and upheld them in the face of due process challenges under rational basis review.  *See Ramsey Winch Inc., v. Henry*, 555 F.3d 1199, 1210-11 (10th Cir. 2009); *Fla. Retail Fed'n, Inc. v. Att'y Gen. of Fla.*, 576 F. Supp. 2d 1281, 1293 (N.D. Fla. 2008).  This Court should do the same here.

---

[2] *See supra* note 1.

*Second*, the Coalition has even less of a recognized right here because it couches its right to exclude in the right to personal security, not the fundamental *property* right to exclude. *See* ECF No. 46 at 18 n.7. It noticeably ignores the Attorney General's arguments and case law showing that the right to personal security typically "arise[s] in the context of government-imposed punishment or physical restraint." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998). And courts have rarely extended the right beyond this context. *See* ECF No. 45 at 6-7 (distinguishing authorities). The Coalition also does not even try to revive its argument on cases the Attorney General explained do not apply in this context. Thus this Court should not extend the right here.

### B. The Act Satisfies Rational Basis Review.

The Act satisfies rational basis review because it "serve[s] [a] legitimate governmental objective" and is not "arbitrary or irrational." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). Here, the Act serves West Virginia's interest in protecting the constitutional right to bear arms for self-defense and promotes public safety. The Tenth Circuit in *Ramsey* and the Northern District of Florida in *Florida Retail* found these interests easily satisfied rational basis review. *Ramsey*, 555 F.3d at 1210-11; *Fla. Retail*, 576 F. Supp. 2d at 1287-88.

The Coalition does not rebut the existence of these interests but asserts that the Act does not achieve them. The Coalition argues that the Act does not protect the Second Amendment, because allowing firearms on shelter property could never advance the Second Amendment and asserting, first, that the rights secured by the Second Amendment do not extend outside the home and into the private property of others and, second, that it contrarily impedes on the Coalition's Second Amendment rights. ECF No. 46 at 14-15.

*First*, the Fourth Circuit declined to answer the question whether the Second Amendment extends beyond the home, much less how far. *See Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013) ("refraining from any assessment of whether Maryland's good-and-substantial-reason requirement for obtaining a handgun permit implicates Second Amendment protections."). But several federal circuit courts have specifically found the right does apply outside the home. *See Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017) ("[T]he individual right to carry common firearms beyond the home for self-defense—even in densely populated areas, even for those lacking special self-defense needs—falls within the core of the Second Amendment's protections."); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) ("[T]he amendment confers a right to bear arms for self-defense, which is as important outside the home as inside."); *see also Gould v. Morgan*, 907 F.3d 659, 670 (1st Cir. 2018) (finding right existed outside the home but in a weaker form); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("the [Second] Amendment must have some application in the very different context of the public possession of firearms" but finding it not within the core protections). And the two courts that have addressed similar challenges to parking lot statutes found that the respective States there were within their constitutional bounds to balance the "substantial interest in lawfully possessing a gun" with property rights in this way. *Fla. Retail*, 576 F. Supp. 2d at 1288, 1300; *see also Ramsey*, 555 F.3d at 1211 ("In addition to the Amendment's purpose of increasing safety, one could argue that the Amendments are simply meant to expand (or secure) the Second Amendment right to bear arms. Because we cannot say the Amendments have no reasonably conceivable rational basis, Plaintiffs' due process claim must fail." (internal citation omitted)).

In light of these strong indications that West Virginia's legislature acted to protect a constitutional right, the argument that the parking lot statute fails the same rational basis review

that the claim in *Heart of Atlanta* failed.  If even run-of-the-mill "rational" state interests can justify a legislature's decision to limit a business's right to exclude, they do so much more when the legislature acts to protect a right of constitutional import.

The Eleventh Circuit's opinion in *GeorgiaCarry.Org, Inc. v. Georgia* does not counsel finding differently.  That case spoke to whether a State can restrict firearms from private properties, not whether a State can protect Second Amendment rights by allowing employees and invitees to keep firearms in their vehicles.  *See* 687 F.3d 1249 (11th Cir. 2012).  The Coalition argues that this is a distinction without a difference, but deciding whether the State can restrict Second Amendment rights is different than determining how much it can protect them.  Moreover, the Tenth Circuit in *Ramsey* upheld a parking lot law noting that "one could argue that the [statute is] simply meant to expand (or secure) the Second Amendment right to bear arms" in upholding its constitutionality.  *Ramsey*, 555 F.3d at 1211.

*Second*, this is the first time the Coalition has asserted that the Act violates its Second Amendment rights.  As the Coalition notes in its reply, "[a]s a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived." *Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008); *see also* ECF No. 46 at 9 n.3.  Further, neither the Supreme Court nor the Fourth Circuit has ever held that there is a negative Second Amendment right.  The only support the Coalition provides for this proposition is a book. *See* ECF No. 46 at 20 (citing Joseph Blocher & Darrell A.H. Miller, *The Positive Second Amendment: Rights, Regulation, and the Future of* Heller 163-64 (2018)).  It points to cites in its opening brief for support, but again these cases answer the opposite question than at issue here: the extent a State can limit the right to carry in long-established protected areas.  *See, e.g.*, *United States v. Class*, 930 F.3d 460, 465 (D.C. Cir. 2019) (upholding prohibition of weapons in the

parking lot of the United States Capitol).  This is important because in the first context the question for courts is whether the Government has identified significantly weighty and tailored interests, not whether that decision itself violates a different (and negative) constitutional right.

The Coalition also points to the hypothetical of requiring pacifists to allow firearms on their property.  That is a different case because the Coalition does not assert that interest here. Even so, it is unclear that the pacifist would succeed there because courts have upheld greater intrusions than simply allowing firearms locked in vehicles on a business's property.  *Cf.* 50 U.S.C. § 3806(j);       Selective       Service       System,       "Conscientious       Objectors," https://www.sss.gov/register/alternative-service/ (last accessed May 10, 2021) (describing the alternative duties for qualified objectors who still must join the military).

*Second*, the Northern District of Florida found that a legislature could reasonably find that "human experience" and "common sense" dictate that the presence of firearms can be a "small net positive" on public safety.  *Fla. Retail*, 576 F. Supp. 2d at 1290-91.  Under rational basis review, courts should defer to the legislature what degree of positive good is enough because even legitimate interests that make a small change can be enough, which is the purpose of a deferential standard.  *Cf. Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017) ("It is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.  And we must accord substantial deference to the predictive judgments of the legislature." (quotations omitted, cleaned up)).

The Coalition fails to appreciate that the presence of lawful possessors of firearms may help diffuse violence.  Rather, the Coalition argues that the Act does not serve public safety, pointing to the stipulated facts about the dangers shelter victims face from armed abusers.  *See* ECF No. 46 at 16.  Yet these dangers exist whether or not firearms are allowed in its parking lots. Moreover, this argument does not acknowledge that the Act only applies to lawfully possessed

firearms—and West Virginia law already prohibits anyone guilty of domestic violence or subject to a domestic violence protective order from possessing firearms at all. *See* W. Va. Code §§ 48-27-403(a), 61-7-7(a)(1), (7), (8). Importantly, it asks this Court to assume that even the lawful possession of firearms is inherently violent.

The Coalition further asserts that the decisions in *Ramsey* and *Florida Retail* are inapplicable here because they dealt with employees and not invitees, too. But if the "right . . . to control[] the conditions under which someone may enter the property" is really a "corollary" right to the right to personal security, ECF No. 39 at 25, then this distinction should not matter. The Florida statute initially protected invitees a well. That aspect was enjoined solely because it only applied to customers of businesses that employed at least one individual with a concealed-carry permit. *See Fla. Retail*, 576 F. Supp.2d at 1291-93. Further, this is a distinction without a difference. Employees and invitees hold the Second Amendment rights protected by the Act equally. Nor does the Coalition offer any explanation for why the broader employee/invitee distinction matters from a public safety perspective.

The Coalition also challenges the length of the *Ramsey* opinion's analysis, but the Tenth Circuit expressly stated it did not need to engage in "the long-running debate as to whether allowing individuals to carry firearms enhances or diminishes the overall safety of the community" because "[t]he very fact that this question is so hotly debated . . . is evidence enough that a rational basis exists for the [statute]." 555 F.3d at 1211.

The Northern District of Florida found similarly in *Florida Retail*. *See* 576 F. Supp. 2d at 1290-91. The Coalition asks this Court to disregard this explanation, alleging the district court did not cite any record evidence. ECF No. 46 at 17. But the district court noted it considered the expert affidavits and, after considering the "likely real-world effect," found that "common sense

and human experience" counseled "a reasonable legislator to conclude that allowing workers with concealed-carry permits to keep firearms in business parking lots would have either a small net positive or small net negative effect on overall public safety." 576 F. Supp. 2d at 1290-91.

In sum, the Coalition's salvo of objections to the Act has failed to dismantle either of the Act's purposes. Their rational basis challenge could only succeed had they managed to dismantle both. Thus this Court should grant summary judgment in favor of the Attorney General on this claim.

## II.     The Act Does Not Violate The Coalition's Members' Free Association Rights.

The Coalition still fails to show that the Act violates its associational rights—directly or indirectly—by requiring it to allow firearms secured in vehicles in their parking lots. The Supreme Court's decision in *Rumsfeld v. Forum for Acad. and Institutional Rts. ("FAIR")*, 547 U.S. 47 (2006), explains why this is not a cognizable free association claim. There the law schools argued that their "ability to express their message that discrimination on the basis of sexual orientation is wrong is significantly affected by the presence of military recruiters on campus and the schools' obligation to assist them." 547 U.S. at 68. The Supreme Court rejected this claim finding that the challenged law did not violate the law schools' associational rights either directly or indirectly, holding that painting the intrusion as similar to established associational claims, "overstates. . . the impact of the [act] on [the expressive activity], while exaggerating the reach of [] First Amendment precedents." *Id.* at 70. The Coalition's arguments as to why this Court should reject *FAIR* are unavailing

The Coalition argues *FAIR* simply required the law schools to treat military recruiters the same as other recruiters while the Act requires it to treat firearms differently than other weapons and is thus more intrusive. *See* ECF No. 46 at 12. This ignores the Court's clear statement that the "mere presence" of the recruiters and their "repugnant message" "[did] not violate a law

9

school's right to associate."  547 U.S. at 70.  The "critical" distinction for the Court between the

challenged law and other freedom of association cases like *Boy Scouts of America v. Dale*, 530

U.S. 640 (2000), was that the law schools only "associate[d] with military recruiters in the sense

that they interact[ed] with them"—not the equal treatment of the recruiters.  547 U.S. at 70.

Otherwise, the Court would have foregone the analysis on the level of intrusion for one on equal

protection.

The Coalition points out that the Supreme Court in *FAIR* stated, "that the freedom of

expressive association protects more than just a group's membership decisions," such as by

making "group membership less attractive."  547 U.S. at 69.  But notably, the Coalition does not

dispute that its claim is unlike those in any Supreme Court case finding government action made

an association undesirable.  It does not deny that the Act does not require disclosure of membership

lists for groups seeking anonymity, *see Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,

459 U.S. 87, 101-02 (1982), or impose penalties or withhold benefits based on membership in a

disfavored group.  *See Healy v. James*, 408 U.S. 169, 180-84 (1972).

The Coalition instead again argues that it makes membership unattractive by making the

shelter feel unsafe.  But, in its Complaint, the Coalition stated, "that residents sometimes bring

weapons onto the property," including firearms.  ECF No. 1 at 21, ¶ 64.  So some members may

want firearms.  Further, the Act unquestionably only permits firearms in the parking lot if they are

secured in vehicles.  *See* W. Va. Code § 61-7-14(d)(1)(A)-(D).  West Virginia Code section 61-7-

14(b) still allows businesses to prevent open or concealed carry on their properties.  This allows

businesses to act if someone brings the firearm outside of the vehicle and carries on the property.

Far from "discount[ing]" the Coalition's concern, ECF No. 46 at 13, the Attorney General has

pointed out several ways that the Coalition can continue to provide a safe environment for residents.  ECF No. 45 at 12.

Nor does the Act prevent the Coalition from protesting gun violence, having signs expressing their views on gun violence in the newspaper, radio, or television, and having educational programing in the shelter to educate others on the use of firearms in domestic violence incidents.  Most importantly, the Coalition members can—and do—prohibit individuals from carrying on their property or in the shelter.  *See* ECF No. 39 at 1, 7.  Indeed, the Coalition acknowledges that the Act only precludes the Coalition from asking about the presence of and taking action upon learning of firearms stored in vehicles in the parking lot.  *See* ECF No. 46 at 18 (noting that it cannot protest when it learns someone has a firearm in the parking lot).  The Coalition tries to bypass these open avenues by painting its mission narrowly as one that can only be accomplished by prohibiting guns in parking lots.  *See* ECF No. 46 at 13.  But non-violence can be accomplished outside that.  More importantly, this is just what the Supreme Court said associations cannot do: "'erect a shield' against laws requiring access 'simply by asserting' that mere association 'would impair its message.'"  *FAIR*, 547 U.S. at 69 (quoting *Dale*, 530 U.S. at 653).

Because the Coalition has not established a violation of its associational rights, its claim fails and this Court need not address it under any level of scrutiny, much less strict.  Thus the Attorney General is entitled to summary judgment on this claim.

## III.    The Act Is Not Unconstitutionally Vague.

The Coalition asserted in its Complaint and opening brief that the Act is vague because it does not define "privacy rights" or the phrase "any action against."  ECF No. 1 at 30-31, ¶¶ 98-101; ECF No. 39 at 23-24.  The evidence it proffered in support of this argument were statements

from its members on possible actions they wish to take.  As the Attorney General explained in his opening brief/response, these actions are prohibited under the Act.  *See* ECF No. 45 at 14.  Now the Coalition shifts its claim from vagueness based on those provisions to the statute as a whole and a new claim that the Act is overbroad.  *See* ECF No. 46 at 9.  As this claim was not raised in the opening brief it is waived.  *See Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008); *see also* ECF No. 46 at 9 n.3.  Thus the Court should reject its overbroad claim at the outset.

The Coalition asserts that the Act is overbroad because it precludes "making any inquiries or statements concerning gun possession on their property."  ECF No. 46 at 11.  Even if this Court addresses this waived claim, the Coalition's argument ignores the language of the Act that "provide[s] sufficient narrowing context."  *United States v. Miselis*, 972 F.3d 518, 545 (4th Cir. 2020) (quotation omitted).  In addressing an overbroad claim, courts must "first 'construe the challenged statute.'"  972 F.3d at 531 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).  "[T]o avoid any 'constitutional problems'" courts "ask[] whether the statute is 'subject to [ ] a limiting construction.'"  *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982)).  "Altogether, these efforts to preserve a statute from facial invalidation reflect the notion that the overbreadth doctrine is strong medicine, to be applied only as a last resort, when it is truly warranted."  *Id.* (quotation omitted).

Here, the Inquiry Provision is limited to questions "regarding the presence or absence of a firearm locked inside or locked to a motor vehicle in a parking lot."  W. Va. Code § 61-7-14(d)(2)(A).  The statute does not bar the Coalition from asking whether individuals are carrying firearms when they enter the building.  Thus the Coalition's overbreadth challenge fails.

With respect to the newly constructed vagueness claim, the Parties agree on the correct legal standard of review.  "Where, as here, the challenged statute implicates First Amendment

rights, the facial vagueness analysis requires the Court to determine whether the boundaries of prohibited conduct are so uncertain that a person is likely to refrain from legitimate exercises of his First Amendment rights for fear of running afoul of the law." *Stover v. Fingerhut Direct Mktg., Inc.*, 709 F. Supp. 2d 473, 481 (S.D. W. Va. 2012).

The plain words in subsection (d)(2) of the Act prohibit businesses from violating privacy rights "by" making "verbal or written statements of any party concerning possession of a firearm stored inside a motor vehicle in a parking lot for lawful purposes" and "taking any action" upon learning about the presence of a lawfully possessed firearm in a vehicle. W. Va. Code § 61-7-14(d)(2)(A), (C). The Coalition fails to prove that the prohibited conduct is "so uncertain." Rather, the Coalition asserts that the "trickier" hypotheticals raised in their submission demonstrate the Act is unconstitutionally vague. *See* ECF No. 46 at 10. However, the standard for vagueness is not that one can create "tricky" hypotheticals or that a party does not like that certain actions they desire to engage in are prohibited. The standard is that an "ordinary person exercising ordinary common sense can sufficiently understand" that it cannot violate the privacy rights of the covered persons by taking the enumerated actions. *Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010). And "precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Miselis*, 972 F.3d 518, 544 (4th Cir. 2020) (quotation omitted). This Court need only read the statute and compare it to the Coalition's alleged confusion to find the Coalition's claim baseless.

Moreover, the Tenth Circuit in *Ramsey* held that Oklahoma's parking lot statute was not vague because it applied to the plaintiff's desired action to preclude firearms from its premises. *See* 555 F.3d at 1211 n.11. The same could be said here as discussed above. The Coalition asks this Court to disregard this aspect of the opinion because of its brevity and because it was not a

First Amendment challenge.  But its succinctness does not change the holding and may suggest what the Tenth Circuit thought about the substance of the claim.  And, although *Ramsey* was not a First Amendment challenge, as noted in the Attorney General's response brief and ignored by the Coalition, its holding that those whom a statute covers cannot challenge its vagueness has been approved in the First Amendment Context.  *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *see also Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 2015) (applying Parker to First Amendment challenge to robo-call statute); *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 139 (4th Cir. 2011) (applying Parker to First Amendment challenge to a public assembly ordinance).  Further, *United States v. Edwards*, cited in the Attorney General's opening brief, *see* ECF No. 45 at 14, was a First Amendment case.  783 F. App'x. 540 (6th Cir. 2019).  The Sixth Circuit held that language such as "taking [] any action harmful to any person" to be "plain, common language." *Id.* at 545.

Put simply, the heart of the Coalition's claim is squarely covered by the statute.  This is not a case where a party may be at the margins of the statute's reach.  And *Ramsey* and the above cases are clear that vagueness does not help plaintiffs like the Coalition whose actions plainly fall under the statute.

## IV.     The Act Does Not Violate Free Speech Rights.

Finally, the Act does not unconstitutionally burden the Coalition's free speech rights. Because the Act burdens commercial speech, the proper standard of review here is intermediate scrutiny.  The Coalition argues that this speech is not commercial because it does not propose a commercial transaction.  *See* ECF No. 46 at 3.  But the Fourth Circuit stated that "even where speech 'cannot be characterized merely as proposals to engage in commercial transactions,' the speech may yet be deemed commercial.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v.*

14

*Mayor & City Council of Balt.*, 721 F.3d 264, 284 (4th Cir. 2013) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).  This case is an example of speech that is commercial for constitutional purposes even though it does not directly involve a commercial transaction.

The Fourth Circuit has looked at "three factors to consider in deciding whether speech is commercial: (1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Greater Balt.*, 721 F.3d at 285 (citation omitted).  "The combination of all these characteristics provides strong support for the conclusion that speech is properly characterized as commercial speech" but each characteristic "is not necessary . . . for speech to be commercial." *Id.* (cleaned up).  Thus far from "flout[ing] circuit precedent," ECF No. 46 at 4, the Attorney General's assertion that the definition of commercial speech is not fixed is in line with it.

Facially, the Act only applies to customers, invitees, and employees of businesses.  *See* W. Va. Code § 61-7-14(d).  The Act applies to many different types of businesses that provide paid services, such as stores.  Under a facial challenge, a statute's ordinary scope determines what level of scrutiny applies.  *Cf. Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) ("[A] court considering a facial challenge is to assess the constitutionality of the challenged law without regard to its impact on the plaintiff asserting the facial challenge." (quotation omitted)).  In this sense, this case is much like the Third Circuit's opinion in *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*.  There the regulated speech related to the negotiation of employment which is part of a "commercial transaction."  *See* 949 F.3d 116, 137 (3d Cir. 2020).  So too here, the inquiry about firearms is part of businesses' self-regulation of who the business transacts with.  Some businesses will have commercial interests in asking about the presence of firearms—such as prohibiting firearms to help market itself as a firearms-

free zone, and thereby attract clients and employees.  Thus to many businesses this will implicate commercial speech.

Even in the Coalition's specific context, the Inquiry Provision regulates speech adjacent to the transaction.  The Coalition notes that on remand the district court in *Greater Baltimore* held that the pregnancy center's speech was not commercial.  But this decision turned on "extensive discovery" and the "fully developed record" in that case.  879 F.3d 101, 109 (4th Cir. 2018).  The Fourth Circuit stated that it did not "foreclose the possibility that another facility in different circumstances could engage in commercial speech."  *Id.*  And, as the Fourth Circuit noted in another opinion, *Greater Baltimore* "approvingly highlighted a state supreme court case that considered as commercial speech a non-profit crisis pregnancy center's misleading . . . advertisements," *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 258 (4th Cir. 2017), just one of the factors above.

The Coalition exhaustively describes how it needs to know about the presence of firearms to provide safe services for shelter visitors and residents and "to retain and attract residents."  *See* ECF No. 39 at 3-9, 17.  Indeed, it is part of its members' screening interviews for residents as well as visitors.  *See* ECF No. 39 at 7.  Thus, in the Coalition's own words, the speech relates to its provision of services and making its shelters more attractive.  Because asking about the presence of firearms is a key component of its ability to attract residents and, as they assert, their mission of promoting non-violence, this speech could impact fundraising and gaining partnerships.  Thus there is an economic motivation for the speech.  So although the first characteristic is not present, the latter two are.

Under intermediate scrutiny, the Act "directly advances a substantial governmental interest" and "is drawn to achieve that interest."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572

(2011) (citation omitted).  The Inquiry Provision here advances the State's interest in protecting Second Amendment rights by protecting those who wish to exercise this right from private encumbrances, discrimination, and invasions of privacy.  And it advance this right by prohibiting businesses from investigating and gaining the ability to discriminate against these persons.

The Coalition argues that the State does not have an interest in protecting against private encumbrances because the Constitution only protects against government intrusion.  *See* ECF No. 46 at 11.  But the Coalition again ignores the government's ability to protect its citizens against private encumbrances of their constitutional rights.  *See, e.g.*, *Runyon v. McCrary*, 427 U.S. 160, 175-79 (1976) (upholding constitutionality of Section 1981 of Civil Rights Act to private schools seeking to bar admission of African-American students against First Amendment challenge).  And a State may "exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution."  *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980) (citation omitted).  Moreover, although plaintiffs did not bring a First Amendment challenge, the Northern District of Florida still upheld the provision as a "corollary" to the rest of the statute.  *Fla. Retail*, 576 F. Supp. 2d at 1293.  So at worst it is helpful dicta in favor of the Attorney General.  Thus the Coalition's argument that the State does not have an interest in the Act fails.

The Coalition serves as an example of why the State saw this as necessary by stating its members previously asked about the possession of firearms and banned them from its properties.  *Cf*. ECF No. 46 at 6-7 (arguing the Attorney General offers no examples of private businesses prohibiting firearms); ECF No. 39 at 7 (admitting it regularly inquired about the presence of firearms and banned firearms from shelter property).

The Coalition also argues the No Action Provision unconstitutionally encumbers free speech.  But this provision "affects what [businesses] must do"—not take any action upon learning of the presence of a firearm in a vehicle in the parking lot—"not what they may or may not say." *FAIR*, 547 U.S. at 60.  Because the provision does not regulate speech, the Coalition's First Amendment challenge to it fails.

In asserting that the No Action Provision regulates speech, the Coalition points to the trigger for taking action being the business learning, upon verbal or written statement, that there is a firearm in a vehicle in the parking lot.  *See* ECF No. 46 at 8.  But just because the business learns of the firearm in verbal or written form does not mean the prohibition against taking any action regulates speech.  This is not an instance in which the trigger to the prohibition is the actor's speech.  *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28, (2010) (noting that the law was triggered based on what type of speech was desired to be communicated).  Noticeably absent are citations to cases holding to the contrary.  Thus this case is like the rejected argument made by the law schools in *FAIR* that the Solomon Act's requirement that they assist military recruiters implicated their Free Speech rights.  *See* 547 U.S. 47 at 61-62.  The Supreme Court acknowledged that "recruiting assistance provided by the schools often includes elements of speech" but still concluded that the law was a "far cry" from regulating speech.  *Id.* at 62.

The Coalition tries to amplify the speech component by outlining verbal actions it cannot take.  But in these examples, the expression is incidental to the action like in *FAIR*.  For example, asking someone to leave is incidental to the action of removing them from the premises.  There are also several actions the provision regulates that are not verbal such as blocking access to the building for someone with firearms in their vehicles or removing the person from the premises.  Judges within this district have found this latter aspect instructive in determining whether a statute

regulates speech.  *See, e.g.*, *Durstein v. Alexander*, 2021 WL 1085297, at *5 (S.D. W. Va. Mar. 19, 2021) (noting that the statute "does not expressly target speech" and that violations of it can take many forms that do not implicate the First Amendment).

Even if this Court views the No Action Provision as regulating speech, it is constitutional for the same reasons as the inquiry provision.  *See FAIR*, 547 U.S. at 67 (noting that intermediate scrutiny applies to conduct regulation that incidentally burdens speech); *see also D.G. Rest. Corp. v. City of Myrtle Beach*, 953 F.2d 140, 143-44 (4th Cir. 1991) (same).  And the Coalition does not contest that if this Court finds that both provisions are unconstitutional they are severable from the Act.

19

**CONCLUSION**

The Court should grant the Attorney General's cross-motion for summary judgment and deny the Coalition's motion.

Respectfully submitted,

PATRICK MORRISEY
  ATTORNEY GENERAL


/s/ Steven A. Travis
Lindsay S. See (WV Bar #13360)
  *Solicitor General*
Douglas P. Buffington, II (WV Bar #8157)
  *Chief Deputy Attorney General*
Steven A. Travis (WV Bar #10872)
  *Deputy General Counsel*
Jessica A. Lee (WV Bar #13751)
  *Assistant Solicitor General*
Office of the West Virginia Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Email: Steven.A.Travis@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

DATE:  May 10, 2021